**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| DARREN KONDASH, individually and on behalf of others similarly situated, | Case No. 1:18-cv-00288 |
| Plaintiff, | |
| v. | |
| CITIZENS BANK, NATIONAL ASSOCIATION, | Hon. Judge William E. Smith<br>Hon. Mag. Judge Lincoln D. Almond |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>INCORPORATED MEMORANDUM IN SUPPORT</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

SUMMARY OF THE SETTLEMENT .................................................................................1

ARGUMENT .......................................................................................................................3

I.     This Court should preliminarily approve this proposed Settlement. ...................................3

     A.     Plaintiff and Class Counsel have and will continue to adequately represent the Class. ...........................................................................................................................5

     B.     The Settlement was negotiated at arm's-length and without fraud or collusion......5

     C.     The Settlement provides substantial relief for the Class..........................................6

          1.     The Settlement is preferable to continued litigation. ...................................7

          2.     The method of providing relief is effective. .............................................10

          3.     The proposed award of attorneys' fees is fair and reasonable. .................11

     D.     The Settlement treats all Class Members fairly. ....................................................12

II.     The Settlement Class satisfies Rule 23. ...........................................................................14

     A.     The members of the Class are so numerous that joinder is impracticable..............15

     B.     Questions of law or fact are common to the members of the Class.......................15

     C.     Plaintiff's claims are typical of the claims of the Class........................................16

     D.     Plaintiff will fairly and adequately protect the interests of the Class. ...................17

     E.     The questions of law or fact common to the members of the Class predominate over any potential individualized questions...........................................................18

     F.     A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the Class. ............................................19

III.     The notice plan satisfies the requirements of Rule 23 and due process requirements.......20

CONCLUSION...................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Am. Assoc. of Political Consultants, Inc. v. F.C.C.*,
 923 F.3d 159 (4th Cir. 2019) ................................................................................. 7

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ..................................................................................... 18, 19

*Baptista v. Mutual of Omaha Ins. Co.*,
 859 F. Supp. 2d 236 (D.R.I. 2012) ......................................................................... 7

*Bellows v. NCO Fin. Sys., Inc.*,
 No. 07-1413, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) .................................... 17

*Bennett v. Behring Corp.*,
 96 F.R.D. 343 (S.D. Fla. 1982) .............................................................................. 9

*Bezdek v. Vibram USA, Inc.*,
 809 F.3d 78 (1st Cir. 2015) .............................................................................. 6, 12

*Charvat v. Allstate Corp.*,
 29 F. Supp. 3d 1147 (N.D. Ill. 2014) ...................................................................... 8

*Clough v. Revenue Frontier, LLC*,
 No. 17-411, 2019 WL 2527300 (D.N.H. June 19, 2019) .................................. 16, 19

*Couser v. Comenity Bank*,
 125 F. Supp. 3d 1034 (S.D. Cal. 2015) .................................................................. 14

*Del Valle v. Glob. Exch. Vacation Club*,
 320 F.R.D. 50 (C.D. Cal. 2017) ............................................................................. 8

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
 177 F.R.D. 54 (D. Mass. 1997) ............................................................................ 15

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974) ........................................................................................... 20

*García-Rubiera v. Calderón*,
 570 F.3d 443 (1st Cir. 2009) ................................................................................ 15

*Gehrich v. Chase Bank USA, N.A.*,
 316 F.R.D. 215 (N.D. Ill. 2016) ..................................................................... 16, 18

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ........................................................................... 9

*Gorsey v. I.M. Simon & Co.*,
    121 F.R.D. 135 (D. Mass. 1988) ..................................................................... 15

*Gulbankian v. MW Mfrs., Inc.*,
    No. 10-10392, 2014 WL 7384075 (D. Mass. Dec. 29, 2014) ............................ 9

*Hashw v. Dep't Stores Nat'l Bank*,
    182 F. Supp. 3d 935 (D. Minn. 2016) ............................................................. 14

*Hochstadt v. Bos. Sci. Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................ 4, 5

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ......................................................................... 16

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................... 13

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ........................................................................ 21

*In re Dial Complete Mktg. & Sales Practices Litig.*,
    312 F.R.D. 36 (D.N.H. 2015) ......................................................................... 19

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) .................................................................... 14

*In re Loestrin 24 FE Antitrust Litig.*,
    410 F. Supp. 3d 352 (D.R.I. 2019) ................................................................. 15

*In re Lupron Mktg. and Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ........................................................................ 3

*In re Polymedia Corp. Sec. Litig.*,
    224 F.R.D. 27 (D. Mass. 2004) ...................................................................... 15

*In re Sandusky Wellness Ctr., LLC*,
    570 F. App'x 437 (6th Cir. 2014) ................................................................... 20

*Kinney v. Metro Glob. Media, Inc.*,
    No. 99-579, 2002 WL 31015604 (D.R.I. Aug. 22, 2002) ................................ 15

*Ladd v. Brickley*,
    158 F.2d 212 (1st Cir. 1946) .......................................................................... 14

*Lapan v. Dick's Sporting Goods, Inc.*,
   No. 13-11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015)....................................... 6

*Lazar v. Pierce*,
   757 F.2d 435 (1st Cir. 1985) ........................................................................................ 3

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)...................................... 19

*Manno v. Healthcare Rev. Recovery Grp.*,
   289 F.R.D. 674 (S.D. Fla. 2013) ............................................................................. 17

*Matamoros v. Starbucks Corp.*,
   699 F.3d 129 (1st Cir. 2012)................................................................................... 17

*McCue v. MB Fin., Inc.*,
   No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ...................................... 9

*Melito v. Am. Eagle Outfitters, Inc.*,
   No. 14-2440, 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017) ................................. 6

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
   247 F.R.D. 253 (D. Mass. 2008)............................................................................ 16

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003) .............................................................................. 15

*Reliable Money Order, Inc. v. McKnight Sales Co.*,
   281 F.R.D. 327 (E.D. Wis. 2012) .......................................................................... 19

*Rivero Souss v. Banco Santander S.A.*,
   No. 09-2305, 2011 WL 13350165 (D.P.R. June 9, 2011) ...................................... 14

*Rose v. Bank of Am. Corp.*,
   No. 11-2390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ................................. 14

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................... 9

*Schwyhart v. AmSher Collection Servs., Inc.*,
   No. 15-1175, 2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ................................. 11

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003)..................................................................................... 18

*Swack v. Credit Suisse First Boston*,
   230 F.R.D. 250 (D. Mass. 2005)............................................................................ 15

*Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*,
No. 15-2673, 2018 WL 4539287 (N.D. Ohio Sept. 21, 2018) ................................................ 11

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ................................................................................................................ 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ......................................................................................................... 14

*Wreyford v. Citizens for Transp. Mobility, Inc.*,
No. 12-2524, 2014 WL 11860700 (N.D. Ga. Oct. 16, 2014) ...................................................... 11

*Yuzary v. HSBC Bank USA, N.A.*,
No. 12-3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .......................................................... 9

## Statutes

28 U.S.C. § 1715 ............................................................................................................................... 2

47 U.S.C. § 227 ................................................................................................................................. 1

47 U.S.C. § 227(b)(3) ...................................................................................................................... 18

47 U.S.C. § 227(b)(1)(A)(iii) .......................................................................................................... 18

## Other Authorities

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ....................... 4, 5

Manual for Complex Litig. (4th) (2004) .................................................................................... 4, 5

McLaughlin on Class Actions (8th ed. 2011) ................................................................................ 5

## Rules

Fed. R. Civ. P. 23 ............................................................................................................................ 12

Fed. R. Civ. P. 23(a) ....................................................................................................................... 15

Fed. R. Civ. P. 23(a)(3) ................................................................................................................... 16

Fed. R. Civ. P. 23(a)(4) ................................................................................................................... 17

Fed. R. Civ. P. 23(b)(3) ................................................................................................................... 19

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................... 20, 21

Fed. R. Civ. P. 23(c)(2)(C)(iii) ....................................................................................................... 11

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................ 4

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................... 4, 20

Fed. R. Civ. P. 23(e)(1)(B)(ii) ..................................................................... 14

Fed. R. Civ. P. 23(e)(2) .......................................................................... 3, 4

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................... 5

Fed. R. Civ. P. 23(e)(2)(C)(i) ....................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C)(ii) .................................................................... 10

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................... 12

Fed. R. Civ. P. 23(g) .................................................................................. 17

Fed. R. Civ. P. 23(b)(3)(D) ......................................................................... 19

## INTRODUCTION

This case arises from autodialed calls Defendant Citizens Bank, N.A. ("Citizens") allegedly sent to the cell phone numbers of Plaintiff and others, which Plaintiff asserts violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Citizens disputes that the calls were improper. Although the Parties disagree as to the merits of the case, they have agreed to resolve Plaintiff's claims on a class-wide basis.

The proposed Settlement calls for Citizens to pay $1,837,500 into a non-reversionary common fund for the benefit of a Settlement Class comprised of persons Citizens called using its Avaya, Noble, or Nuance dialing systems between July 14, 2015 and December 31, 2019. A total of 283,264 unique cell numbers applicable to the Class have been identified, subject to further confirmatory discovery and a true-up. Qualified claimants will receive a *pro rata* distribution of the Settlement Fund, less costs of notice and administration, attorneys' fees and expenses, and incentive award, estimated at about $30 to $60 each. Under the Settlement, all funds will be distributed for the benefit of the Class, and no money whatsoever will revert to Citizens.

This is an excellent result, considering the risks, burden, and expense of further litigation. There is substantial reason for this Settlement to be approved, and for the Class to be certified for purposes of judgment on the proposal, such that notice to the Class is appropriate. As such, Plaintiff asks that the Court preliminarily approve the Settlement, conditionally certify the Settlement Class, and permit notice to issue under the terms of the Agreement, as detailed herein.

## SUMMARY OF THE SETTLEMENT

The Settlement calls for Defendant to create a non-reversionary cash Settlement Fund of $1,837,500, *see* Settlement Agreement ("Agr.") ¶ 4.02, attached as Exhibit 1, to compensate the following Settlement Class:

1

> [A]ll subscribers and regular users of cellular telephone numbers that Citizens Bank, N.A. called through Citizens' Avaya, Noble, or Nuance dialing systems during the Class Period, limited to the Class List of approximately 283,264 unique cellular telephone numbers identified through Defendant's records.

*Id.* ¶ 2.28. The Settlement Fund amount is subject to a *per capita* true-up, should more cell numbers applicable to the Class be identified as a result of confirmatory discovery. *Id.* ¶ 4.05.

Notice to the Class will be effectuated by a Settlement Administrator, KCC, which will send mail notices in the form provided as Exhibit C-1 to the Agreement to all Class Members identified on the Class List,[1] as well as email notice to all such persons for whom such information is available. *Id.* ¶ 8.02. Additional notice intended to capture Class Members who may not have viewed or received the mailed short-form notice will be effectuated through online publication notice through Facebook, Instagram, Google Ads, or similar, reasonably targeted at the Class in the form provided as Exhibit C-3 to the Agreement. *Id.* ¶ 8.03. The Settlement Administrator will also create a dedicated website containing relevant settlement documents, a long-form notice in the form of Exhibit C-2 to the Agreement, and other relevant information, through which Class Members may also submit claims. *Id.* ¶ 8.04. A toll-free number will also be made available for Class Members to learn more about the Settlement and contact the Settlement Administrator. *Id.* ¶ 8.05.[2]

To obtain compensation from the Settlement, Class Members must submit a claim to the Settlement Administrator by mail or online through the settlement website. *Id.* ¶¶ 9.01-9.02. Each Class Member who submits a timely and valid claim will be entitled to his or her *pro rata* share of

---

[1]    To the extent name and address information is not available through Citizens' records, for example if the class member no longer has an active account, the administrator will do a reverse-lookup to find the best available address.

[2]    The Settlement also contemplates that Defendant will be responsible for notice required under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *See* Agr. ¶ 8.06.

the Settlement Fund per phone number called, less the costs of administration, attorneys' fees and expenses, and any incentive award to Plaintiff. *Id.* ¶¶ 2.30, 4.04.[3] Money remaining after the initial distribution to valid claimants will be redistributed *pro rata* to those claimants who cashed their initial checks, to the extent administratively feasible. *Id.* ¶ 7.04(d). Amounts remaining after exhausting the redistribution process will be distributed as *cy pres*; the parties ask that the Court designate National Local Initiatives Support Corporation (with a specific designation to the Boston and Philadelphia regions) as the recipient of such. *Id.* ¶ 7.04(e).

Class Members may opt-out of or object to the Settlement. *Id.* ¶¶ 10.01-10.02. Those who do not exclude themselves will release claims tailored to the acts that gave rise to this case, i.e.:

> TCPA and related state analogue claims arising out of Citizens making calls through its Avaya, Noble, or Nuance dialing systems. Claims arising from other means of communication are excluded; for example, text messages (e.g., through Varoli), LiveVox calls, and fraud alert calls and texts.

*Id.* ¶ 2.26. This release is thus narrowly tailored to phone violations arising from Citizens' calls.

## ARGUMENT

### I.  **This Court should preliminarily approve this proposed Settlement.**

The First Circuit Court of Appeals has long recognized that there is an overriding public interest in favor of settling class actions, *Lazar v. Pierce,* 757 F.2d 435, 439 (1st Cir. 1985); *see In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements"). Under Fed. R. Civ. P. 23(e)(2), a class action settlement may be approved if the settlement is "fair, reasonable, and adequate."

Approval "usually involves a two-stage procedure. First, the judge reviews the proposal

---

[3]     Plaintiff will move for an award of Class Counsel's attorneys' fees and expenses, and an incentive award, to be paid from the Settlement Fund in advance of the objection deadline. Agr. ¶¶ 5.02, 5.03. Plaintiff anticipates seeking an incentive award of $15,000, and attorneys' fees of one-third of the Fund, or $612,500, plus costs estimated to be $20,000 or less. *Id.* at Ex. C.

preliminarily to determine whether it is sufficient to warrant public notice and a hearing." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 106 (D. Mass. 2010) (quoting Manual for Complex Litig. (4th) § 13.14 (2004) ("MCL 4th"). This first step is "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" MCL 4th § 21.632; *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11.25 (4th ed. 2002). Specifically, counsel submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A).

Grounds exist to give class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MCL 4th § 21.632; Fed. R. Civ. P. 23(e)(1)(B).

4

The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2); *also* MCL 4th § 21.633-34; Newberg on Class Actions, § 11.25; *Hochstadt*, 708 F. Supp. 2d at 106.

As explained below, consideration of these factors supports preliminary approving the Settlement, conditionally certifying the Class, and issuing notice.

**A.    Plaintiff and Class Counsel have and will continue to adequately represent the Class.**

Plaintiff has vigorously prosecuted this action on behalf of the Class through active participation, including by gathering information and materials, responding to discovery requests, staying apprised of the proceedings, and considering and ultimately entering into the Settlement. Exhibit 2, Burke Decl. ¶ 14. There is no indication that Plaintiff has a conflict with any Class Member; his interests in obtaining redress for Defendant's nonconsensual calls are fully aligned with the Class. *Id.*

Furthermore, Plaintiff has retained highly experienced counsel with expertise in TCPA and class litigation. *Id.* ¶¶ 2-11. Plaintiff's attorneys have vigorously prosecuted this action on a contingency basis, obtained critical discovery necessary to litigate and negotiate an informed settlement, and have the means and readiness to continue to advocate for the Class' best interests. *Id.* ¶ 12. Thus, Plaintiff and Class Counsel have and will continue to adequately represent the Class.

**B.    The Settlement was negotiated at arm's-length and without fraud or collusion.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); Fed. R. Civ. P. 23(e)(2)(B) (identifying whether the proposal was negotiated at arm's-length as a relevant factor supporting approval).

Here, the parties negotiated their settlement at arm's-length before and after a formal

mediation with a third-party neutral, the Hon. Morton Denlow (Ret.) of JAMS Chicago. Agr. ¶ 1.02; <u>Exhibit 2</u>, Burke Decl. ¶ 13; *see Lapan v. Dick's Sporting Goods, Inc.*, No. 13-11390, 2015 WL 8664204, at *1 (D. Mass. Dec. 11, 2015) ("The assistance of an experienced mediator ... reinforces that the Settlement Agreement is non-collusive."). Judge Denlow was instrumental in assisting the Parties, and the terms of the Settlement have only been finalized after weeks of substantive, post-mediation back-and-forth. <u>Exhibit 2</u>, Burke Decl. ¶ 13. Accordingly, there can be no doubt that the parties negotiated their settlement at arm's-length, and absent fraud or collusion. *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-2440, 2017 WL 3995619, at *11 (S.D.N.Y. Sept. 11, 2017) (finding, in TCPA case, "that the settlement [wa]s the product of arm's-length negotiations" and "procedurally fair" where, inter alia, the parties "mediated with the Honorable Morton Denlow of [JAMS]").

Additionally, the Parties entered into the Settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with continued litigation. Before mediating, the Parties exchanged first-party discovery, including obtaining data and information identifying the extent and nature of the calling at issue, and exchanged pre-mediation briefs presenting the strengths and weaknesses of the Parties' respective positions. <u>Exhibit 2</u>, Burke Decl. ¶ 13. As such, the Parties conducted enough discovery to be able to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation before negotiating the Settlement. *See Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.").

### C.     The Settlement provides substantial relief for the Class.

The relief afforded under the Agreement further supports a finding that the Settlement is

fair, reasonable, and adequate. As such, and as further detailed below, the proposal should be preliminarily approved.

### 1. The Settlement is preferable to continued litigation.

The "costs, risks, and delay of trial and appeal" are relevant considerations to approval of a proposed class settlement. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also Baptista v. Mutual of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240-41 (D.R.I. 2012) (identifying "the risks of establishing liability, ... damages, [and] ... maintaining the class action through the trial" as relevant approval considerations, as well as "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation") (citation omitted).

Here, the costs, risks, and delay in continued litigation support notice and ultimate approval of the Settlement. Most importantly, the law relevant to the TCPA is in a state of flux, and there is no guarantee that it would not change drastically before summary judgment or trial.  For example, the United States Supreme Court has accepted certiorari in a TCPA case, *Am. Assoc. of Political Consultants, Inc. v. F.C.C.*, 923 F.3d 159 (4th Cir. 2019), *cert granted sub nom Barr v. American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 812 (2020) to consider whether a 2015 amendment to the TCPA exempting government debt collection from the provisions at issue in this case is unconstitutional. Although the Fourth Circuit found the government exemption to favor government speech, it severed the offending portion of the law, which would leave cases like this one intact. Banking industry-related amici, however, have taken the position that the Supreme Court should refuse to sever the exemption, and instead invalidate the entire TCPA. Were the Supreme Court to adopt that position, this case would evaporate and the class would receive nothing.

Additionally, while Plaintiff strongly believes in his claims, Defendant asserts a number of

potentially case-dispositive defenses that pose considerable risk to Plaintiff's ability to certify a litigation class or ultimately obtain relief for himself and a litigation class. For example, Defendant contends that it did not use an autodialer to make the calls at issue, and that it had prior express consent to call some or all of the Class Members. *E.g.,* Dkt. 10, Def.'s Answer pp. 5, 7 ("Plaintiffs' claims are barred in whole or in part by Plaintiffs' or other customary users' prior express consent to receive calls and/or failure to revoke consent to receive calls…. [and] because Citizens did not call Plaintiffs with calling equipment which meets the definition of an automated telephone dialing system under the TCPA.").[4] Defendant also argues that Plaintiff would not be able to certify a class on a litigation basis, including based on its position that, absent settlement and purportedly due to the nature of its records, "it is not administratively feasible to determine whether a particular individual is a class member." *Id*. at pp. 8-9.[5]

Still, Plaintiff disputes Defendant's defenses and opposition to the certifiability of a litigation class, and thinks he would prevail. But his likelihood of success at class certification, summary judgment, or trial is far from certain. Litigation would continue to be lengthy and expensive if this action were to proceed. Although the Parties have conducted discovery applicable to the Settlement Class, absent approval of the Parties' Settlement, substantial additional work— including further adversarial discovery, class certification briefing, summary judgment briefing, and trial—would remain. A Rule 23(f) appeal would almost certainly follow any adversarial certification ruling, which would further delay any judgment in favor of the Class. Absent

---

[4]     Consent is a defense to a TCPA claim, for which the defense has the burden of proof. *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014).

[5]     *But see Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 61 (C.D. Cal. 2017) ("Class certification cannot be defeated by Defendants' poor record-keeping or failure to establish performance data reporting mechanisms with their third-party vendors. This would incentivize companies to not keep records, or not require that their vendors keep records, in an attempt to circumvent TCPA liability.").

settlement, this case could conceivably drag on for another year or more, all without any guarantee that the Class will obtain *any* redress for Defendant's alleged violations. The Settlement avoids these risks and provides immediate and certain relief. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").[6]

Further, even if Plaintiff were ultimately successful at trial, at least some courts view awards of aggregate statutory damages with skepticism, and there is a real risk that any such award could be reduced on due process grounds, either in this Court or on appeal. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (affirming District Court's reduction of jury's $1.6 billion class damages verdict in class TCPA case to $10 per call, or $32,424,930).

Given the costs, risks, and delay of further litigation, the Settlement is reasonable. *See Gulbankian v. MW Mfrs., Inc.*, No. 10-10392, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014) ("Plaintiffs face difficult issues of proof, including maintenance of class status throughout trial, despite substantial individualized ... issues that would be raised at trial in defense.... Settlement thus avoids substantial risks and costs for both sides, giving a certain positive outcome in the face of a costly and uncertain one."); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

---

[6]     *See McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015) (noting courts "encourage parties to settle class actions early, without expending unnecessary resources," and citing *Yuzary v. HSBC Bank USA, N.A.*, No. 12-3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013), for finding "early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

### 2.      The method of providing relief is effective.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The 2018 amendment Committee Note to Rule 23(e)(2) says this factor is to encourage courts to evaluate a claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member relief: cash payments. Here, use of dialer technology is not *per se* illegal; calls to consumers who have consented to receive them are permissible. The Parties therefore propose a claims process that permits persons who received nonconsensual calls to self-identify by affirming as much in their claim form. The claims process was designed to be accessible and straightforward, but at the same time deter unjustified claims without placing undue burdens on Class Members.

In order to make a claim, Class Members need only to fill out a simple, 1-page claim form (*see* Agr. ¶ 9.01, Exs. A, C-1). identifying the Settlement Class Member's 1) name; 2) address; 3) current phone number; 4) cell phone number on which the claimant received a Citizens call; and 5) email address, if available. Claimants must also certify that they received at least one nonconsensual call from or on behalf of Citizens to a telephone number for which they were the user or subscriber. *Id.* at Exs. A, C-1. Claim Forms will be reviewed for completeness, timeliness, and correctness by the Settlement Administrator (including by verifying it against the Class List), and the Parties will use their best efforts to resolve any claim dispute, with the Settlement Administrator having final say. *Id.* ¶ 9.03. Checks will automatically go out to qualified Class

Members no later than 30 days after the Funding Date[7] and, to the extent administratively feasible, the Settlement Administrator will continue to distribute amounts remaining in the Fund thereafter (e.g., due to uncashed checks), before paying the remainder to a Court-appointed *cy pres* recipient. Agr. ¶¶ 7.04(d)-(e), 9.04. This claims and payment process is thus simple, straightforward, and accessible, while appropriately discouraging fraudulent claims by requiring a signed certification and verification process.

### 3.     The proposed award of attorneys' fees is fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," is also relevant to whether the relief provided to the Class in a settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel anticipate seeking an award of fees of attorneys' fees not to exceed one-third of the Settlement Fund, or $612,500, plus costs. *Id.* ¶ 5.02, Exs. C-1, C-2.

This proposed fee amount falls squarely in line with other approved TCPA class settlements. *E.g., Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (awarding fees of one-third of fund in TCPA case); *Wreyford v. Citizens for Transp. Mobility, Inc.*, No. 12-2524, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (same); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-1175, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) ("attorneys' fees … of one-third of the Settlement Fund ... is fair and reasonable"). Plaintiff's counsel achieved an excellent result for the Class despite substantial risk in prosecuting this action on a contingency basis, and they should be fairly compensated.

Plaintiff's counsel will file a separate motion for award of attorneys' fees and costs prior

---

[7]     The Funding Date—when Citizens is to pay the bulk of the Settlement—is 7 business days after the Effective Date, when the Judgment becomes final. Agr. ¶¶ 2.17, 2.22.

to the objection deadline that addresses the facts and law supporting their fee and cost request. *See* Agr. at Ex. D (proposing 30 days after Settlement Notice Date). The fee and costs request will likewise be clearly stated in the Class Notice. Agr. at Exs. C-1, C-2. Further, the Settlement creates an entirely non-reversionary fund – meaning that no money is going back to Citizens – and there is no clear-sailing clause that might otherwise raise a red flag of collusion. *See Bezdek*, 809 F.3d at 84 (clear sailing clauses warrant giving "extra scrutiny" to fee requests). Accordingly, there is no difficulty in evaluating the value of the benefit created by Class Counsel's efforts: the value of the settlement is simply the amount of the settlement: $1,837,500.[8] *See* Fed. R. Civ. P. 23 Notes ("Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members…. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").

### D.   The Settlement treats all Class Members fairly.

The Settlement provides meaningful relief to the Settlement Class, and treats all Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D) (identifying whether "the proposal treats class members equitably relative to each other" as a relevant factor).

Under the Agreement, all Class Members have an equal opportunity to submit a simple, one-page claim form in order to obtain a *pro rata* share of the Settlement Fund per phone number called, less notice and administration costs, attorneys' fees and expenses, and any incentive award. Agr. ¶ 4.04, Exs. A, C-1. Claims may be easily submitted by mail (including by simply filling out

---

[8]     The Settlement ensures that the Claims Deadline ends in advance of the Court's fee determination, providing further information concerning what each individual claimant can reasonably expect to receive. *See* Agr. ¶ 2.07 (Claims Deadline is 90 days from Settlement Notice Date), Ex. D (proposing Final Approval Hearing at least 120 days after Notice Date). The Settlement also contemplates payment of both claimant distributions and attorneys' fees/costs no later than 30 days after the Funding Date. Agr. ¶ 7.04.

the return postcard notice), or online for direct notice recipients, within a reasonable, 90-day claims period. Agr. ¶¶ 2.07-2.08, 8.04, 9.02. No later than 30 days after the Funding Date (i.e., 7 business days after the Judgment becomes final), the Settlement Administrator will mail a check to each valid claimant. Agr. ¶¶ 2.22, 7.04. There will be further redistributions of any uncashed check amounts to the extent feasible. *Id.* This straightforward claims process and equal relief across claimants supports the fairness of the Settlement.

The release contemplated under the Settlement is equitable among the Class, as well. Under the Agreement, all Class Members will provide a release of "TCPA and related state analogue claims arising out of Citizens making calls through its Avaya, Noble, or Nuance dialing systems." Agr. ¶ 2.26. This release is narrowly tailored to the claims at issue in this case, and it even specifically excludes Claims arising from other means of communication, such as "text messages (e.g., through Varoli), LiveVox calls, and fraud alert calls and texts." *Id.* The release does not favor or disfavor certain Class Members over others, since they were all subjected to Defendant's dialer-made calls.

Further, although the amount that of Class Member payments under the Settlement cannot be determined with precision until the claims period is complete and the total number of valid claimants is known, Plaintiff estimates that each claimant is likely to receive at least $30 or more,[9] which mirrors other approved TCPA class cases. *E.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (approving TCPA settlement estimated at $34.60/claimant); *Rose v.*

---

[9]   ($1,837,500 Settlement Fund - $300,000 estimated notice/administration costs - $15,000 service award - $612,500 attorneys' fees - $20,000 estimated maximum expenses) ÷ (10% claims rate x 283,264 Class Members) = approximately $31.42. Given the historically low claims rates in consumer class actions, it is likely that valid claimants will receive more than this. *E.g., Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.") (citation omitted).

*Bank of Am. Corp.*, No. 11-2390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving TCPA settlement with estimated claimant recovery of $20 to $40); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) ($33.20 each); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) ($13.75 each).

The Parties' Settlement, therefore, falls within a range of reasonableness—"'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Rivero Souss v. Banco Santander S.A.*, No. 09-2305, 2011 WL 13350165, at *7 (D.P.R. June 9, 2011) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 326 (N.D. Ga. 1993) (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation."). Indeed, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id.* (citation omitted); *Ladd v. Brickley*, 158 F.2d 212, 220 (1st Cir. 1946).[10]

Because all relevant factors support approval of the Settlement and issuing notice to the Class, Plaintiff's motion should, respectfully, be granted.

## II.   The Settlement Class satisfies Rule 23.

Sending notice of the Settlement is also justified because the Court will likely be able to

---

[10]   In determining whether a settlement is fair in light of the potential range of recovery, important is the maxim that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *See In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 97–98 (D. Mass. 2005) ("While it is possible to hypothesize about larger amounts that might have been recovered, ... '[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)).

certify the Class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B)(ii). As detailed below, the Class meets the requirements for certification under Rule 23(a) and (b)(3).

### A.      The members of the Class are so numerous that joinder is impracticable.

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005). "Generally, 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 397 (D.R.I. 2019) (quoting *García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009)).

The Class encompasses more than 280,000 people whose cell numbers Citizens called during the class period. Agr. ¶ 2.11. This number is easily sufficient to show that joinder is impracticable, satisfying numerosity. *See, e.g., Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (800 to 900-member class made joinder impracticable).

### B.      Questions of law or fact are common to the members of the Class.

Rule 23(a)(2) "requires merely that questions of law or fact common to the class exist." *Kinney v. Metro Glob. Media, Inc.*, No. 99-579, 2002 WL 31015604, at *4 (D.R.I. Aug. 22, 2002). This requirement is construed permissively, and is often easily met. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (describing the commonality requirement as a "low hurdle"); *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003) ("the commonality requirement ordinarily is easily met"). Rule 23(a)(2) does not require that every single question of law or fact raised in the litigation must be common. *In re Polymedia Corp. Sec. Litig.*, 224 F.R.D. 27, 35 (D. Mass. 2004). Rather, commonality is satisfied by showing a single issue common to all members of the class. *Payne*, 216 F.R.D. at 25.

Here, the claims of the members of the Class stem from the same factual circumstances—i.e., they were called on their cell phone by Citizens using its Avaya, Noble, or Nuance dialer. The most important question in the case is thus common to each and every Class Member: whether the system Citizens used to call them constitutes an "automatic telephone dialing system" ("ATDS") under the TCPA. Consequently, the Class satisfies Rule 23's commonality requirement. *See Clough v. Revenue Frontier, LLC*, No. 17-411, 2019 WL 2527300, at \*4 (D.N.H. June 19, 2019) (whether equipment used constitutes ATDS is common question); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("The proposed class also satisfies commonality…. Each class member suffered roughly the same alleged injury: receipt of at least one phone call … from Chase to her cell phone.").

### C.  Plaintiff's claims are typical of the claims of the Class.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of the class. Fed. R. Civ. P. 23(a)(3). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

Here, Citizens used a non-manual dialing system to call Plaintiff's cell phone without his prior express consent, just like it did as to all Class Members. Agr. ¶¶ 1.01, 2.28. Plaintiff's claims are thus typical of the claims of the members of the Class, as they rise and fall on the same set of circumstances, for the same alleged violation: Citizens allegedly placed nonconsensual autodialed calls to their cell phones. *See Gehrich*, 316 F.R.D. at 224 ("The proposed class also satisfies … typicality. Each class member suffered roughly the same alleged injury: receipt of at least one

16

phone call … from Chase to her cell phone."); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-1413, 2008 WL 4155361, at *6 (S.D. Cal. Sept. 5, 2008) ("[T]he typicality requirement is met here. Plaintiff alleges that NCO violated the TCPA by calling his cellular telephone, without 'prior express consent,' using an 'automatic telephone dialing system' or an 'artificial or prerecorded voice.' Plaintiff's claims are identical to the claims of the Class Members."); *Manno v. Healthcare Rev. Recovery Grp.*, 289 F.R.D. 674, 687 (S.D. Fla. 2013).

**D.      Plaintiff will fairly and adequately protect the interests of the Class.**

Rule 23(a)(4) requires that "the representative party must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). "[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. 'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.'" *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) (citation omitted).

Plaintiff's claims here are aligned with the claims of the Class. He thus has every incentive to vigorously pursue the claims of the Class, as he has done to date by remaining actively involved in this matter since its inception, participating in discovery, and involving himself in the settlement process. Exhibit 2, Burke Decl. ¶ 14.

In addition, Plaintiff retained the services of law firms with extensive experience in litigating consumer class actions, and TCPA actions in particular—each of which has invested time and resources in litigating this case on a wholly-contingent fee basis, and is committed to continuing to do so in pursing the best interests of the Class going forward. Exhibit 2, Burke Decl. ¶¶ 2-12; *see* Fed. R. Civ. P. 23(g) (confirming such considerations as supporting appointment of class counsel). Adequacy is satisfied.

17

**E.     The questions of law or fact common to the members of the Class predominate over any potential individualized questions.**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 634 (1997). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations omitted).

Here, there are numerous questions of law or fact common to all Class Members, including whether Defendant's dialer-made calls constituted use of an ATDS under the TCPA, whether the calls were nonconsensual, and whether the alleged violations were "willfully or knowingly" committed. *See* 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(3). These questions can all be answered on a class-wide basis: Either Citizens' automated messages and dialers fall under the auspices of the TCPA, or they do not; either Citizens had consent to call the Class, or it did not; and either it acted willfully, or it did not. "Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim," *Smilow*, 323 F.3d at 40—and here, the parties have identified a discrete Class List of 283,264 numbers applicable to the Class. Consequently, predominance is satisfied. *See Gehrich*, 316 F.R.D. at 226 ("The common questions listed above are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues. The proposed class

18

satisfies Rule 23(b)(3)."); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-1290, 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met.").

### F.     A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the Class.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because Plaintiff seeks to certify the class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").[11]

In any event, no one member of the Class has an interest in controlling the prosecution of

---

[11]    Even in the non-settlement context, proceeding with TCPA claims on behalf of a class is generally "superior to litigation of the issues by individuals." *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012); *see also Clough*, 2019 WL 2527300, at *7 (finding, in TCPA case, that "given the large number of potential class members and the small value of individual claims, 'not only is a class action the superior method of resolving this case, it is the very sort of case for which the Rule 23(b)(3) class action mechanism was intended.'") (quoting *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 57 (D.N.H. 2015)).

this action because Plaintiff's claims and the claims of the members of the Class are the same. Further, the interests of Class Members in individually controlling the prosecution of separate claims is small because, given the statutory basis of their claims and limited, statutorily-set recovery of $500 per violation (or up to $1,500 at the Court's discretion upon a finding of willfulness), *see* 47 U.S.C. § 227(b)(3), many Class Members are likely to be unaware of their rights, and have damages that cannot feasibly be brought on an individual basis.  *See In re Sandusky Wellness Ctr., LLC*, 570 F. App'x 437 (6th Cir. 2014) (vacating order denying class certification in TCPA action, and suggesting that considering the maximum statutory damages available under the TCPA, the plaintiff's claims were such that "denial of a plaintiff class sometimes defeats the case as a practical matter because the stakes are too small and the litigations costs are too high for the individual plaintiff to go forward"). Alternatives to a class action are either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice.

## III.     The notice plan satisfies the requirements of Rule 23 and due process requirements.

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice of a proposed settlement must be the "best notice that is practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "The notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) (citations omitted).

Here, the Parties propose a robust notice program involving direct mail (and, where available, email) notice to Class Members on an identifiable Class List (including as may be identified through reverse-lookup to the extent necessary), a dedicated settlement website, and online publication notice, with a toll-free hotline, to be administered by a well-regarded, third-party administrator, KCC. *See* Agr. ¶¶ 2.09, 8.02-8.05. As such, the Parties' notice plan complies with Rule 23 and due process because, inter alia, it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the class definition and claims, issues, and defenses; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process to object to, or to be excluded from, the Class, including the time and method for objecting or requesting exclusion and that Class Members may make an appearance through counsel; (5) information regarding Class Counsel's request for fees/expenses and an incentive award; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B); *In re Compact Disc*, 216 F.R.D. at 204 (approving notice that "provided class members with sufficient information to make an informed and intelligent decision about whether to file a claim, seek exclusion from the class, or object to the proposed settlement"); *see also* Agr. at Ex. C.

In sum, the Parties' notice plan ensures that Class Members' due process rights are amply protected, and it should be approved.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Court (1) conditionally certify the Settlement Class, (2) conditionally approve the parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (3) appoint Plaintiff as the Class Representative, (4) appoint Plaintiff's counsel as Class Counsel, (5) approve the Parties' proposed

21

notice program, confirm that it is the best practicable under the circumstances and that it satisfies

due process and Rule 23, and direct that it be implemented, (6) set a date for a final approval

hearing, (7) set deadlines for members of the Class to submit claims for compensation, and to

object to or exclude themselves from the Settlement, and (8) grant such further and other relief the

Court deems reasonable and just.

Respectfully submitted,

DARREN KONDASH, individually and
on behalf of others similarly situated

Dated: April 13, 2020

By:  /s/ Alexander H. Burke
Alexander H. Burke (*pro hac vice*)
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com

Christopher M. Lefebvre (#4019)
CONSUMER & FAMILY LAW CENTER OF
CLAUDE F. LEFEBVRE & CHRISTOPHER M.
LEFEBVRE, P.C.
Two Dexter Street
Pawtucket, RI 02860
Telephone: (401) 728-6060
chris@lefebvrelaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 13, 2020, I electronically filed the foregoing with the Clerk

of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel

of record.

 /s/ Alexander H. Burke