**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| DARREN KONDASH, individually and on behalf of others similarly situated, | Case No. 1:18-cv-00288 |
| Plaintiff, | |
| v. | |
| CITIZENS BANK, NATIONAL ASSOCIATION, | Hon. Judge William E. Smith<br>Hon. Mag. Judge Lincoln D. Almond |
| Defendant. | |

**PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD AND
<u>INCORPORATED MEMORANDUM IN SUPPORT</u>**

# TABLE OF CONTENTS

Page

I.    SUMMARY OF THE LITIGATION ...................................................................................1

    A.    The TCPA. ............................................................................................................1

    B.    Summary of Case Proceedings. ............................................................................2

    C.    The Settlement. ....................................................................................................3

    D.    The Notice Informs Class Members About this Fee Request. ...............................4

II.   THE PROPOSED FEE, COST, AND SERVICE AWARDS ARE REASONABLE. ........5

    A.    The Fee Amount Is Reasonable as a Percentage of the Settlement Fund. ..............5

        1.    Class Counsel Achieved an Excellent Result for the Class. .......................6

        2.    This Case Took a High Level of Skill and Experience, which Demanded Class Counsel's Resources in Lieu of Other Cases. ...................................7

        3.    This Case Presented Novel and Difficult Issues, and Significant Risk of Non-Recovery. ..........................................................................................9

        4.    The Requested Fee Is Consistent with Other Consumer Class Settlements. ............................................................................................12

        5.    Public Policy Considerations Support the Fee Request. ...........................13

    B.    The Expenses Incurred Are Reasonable and Should Be Approved. ......................15

    C.    The Class Representative's Incentive Award Request Is Fair, Reasonable, and Supported by Law. ..............................................................................................16

III.  CONCLUSION ............................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ................................................................................................. 10

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
    2011 WL 1706061 (N.D. Ill. May 5, 2011) ............................................................................ 11

*Allan v. Pa. Higher Educ. Assistance Agency*,
    2020 WL 4345341 (6th Cir. July 29, 2020) ............................................................................ 11

*Barr v. Am. Ass'n of Political Consultants, Inc*,
    140 S. Ct. 2335 (2020) ............................................................................................................ 10

*Bennett v. Roark Capital Grp., Inc.*,
    2011 WL 1703447 (D. Me. May 4, 2011) .............................................................................. 13

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    896 F.3d 792 (7th Cir. 2018) .................................................................................................. 12

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ........................................................................................................... 5, 12

*Cabot E. Broward 2 LLC v. Cabot*,
    2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) .......................................................................... 17

*Curtis v. Scholarship Storage Inc.*,
    2016 WL 3072247 (D. Me. May 31, 2016) ............................................................................ 13

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*,
    445 U.S. 326 (1980) ................................................................................................................ 14

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. 2018) ................................................................................................... 11

*Duran v. La Boom Disco, Inc.*,
    955 F.3d 279 (2d Cir. 2020) ................................................................................................... 11

- ii -

*Facebook, Inc. v. Duguid*,
   __ S.Ct. __, 2020 WL 3865252 (U.S. Jul. 9, 2020) ............................................................. 7, 10

*Gadelhak v. AT&T Servs., Inc.*,
   950 F.3d 458 (7th Cir. 2020) .................................................................................................. 11

*Glasser v. Hilton Grand Vacations Co.*,
   948 F.3d 1301 (11th Cir. 2020) ............................................................................................. 11

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
   2019 WL 2249941 (S.D. Fla. May 24, 2019) ......................................................................... 13

*Gordan v. Mass. Mut. Life Ins. Co.*,
   2016 WL 11272044 (D. Mass. Nov. 3, 2016) ......................................................................... 13

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
   2015 WL 13650934 (S.D. Fla. June 24, 2015) ....................................................................... 13

*Hanley v. Tampa Bay Sports & Entm't LLC*,
   2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) ........................................................................ 12

*Hooker v. Sirius XM Radio, Inc.*,
   2017 WL 4484258 (E.D. Va. May 11, 2017) .......................................................................... 14

*In re Capital One TCPA Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. Feb. 15, 2015) ......................................................................... 12

*In re Fid./Micron Sec. Litig.*,
   167 F.3d 735 (1st Cir. 1999) .................................................................................................. 15

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) ........................................................................ 16

*In re Loestrin 24 Fe Antitrust Litig.*,
   2020 WL 4038942 (D.R.I. July 17, 2020) ................................................................. 5, 6, 13, 16

*In re Lupron Mktg. & Sales Practices Litig.*,
   2005 WL 2006833 (D. Mass. Aug. 17, 2005) .......................................................................... 6

*In re Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ............................................................................................ 14

- iii -

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) .................................................................. 7

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995) .................................................................................... 5

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  912 F. Supp. 2d 1178 (D.N.M. 2012) .................................................................... 8

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................... 5

*Jones v. I.Q. Data Int'l, Inc.*,
  2015 WL 5704016 (D.N.M. Sept. 23, 2015) ........................................................ 17

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015)......................................................................... 5, 7

*Krakauer v. Dish Network L.L.C.*,
  311 F.R.D. 384 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019).................... 10

*Krueger v. Ameriprise Fin., Inc.*,
  2015 WL 4246879 (D. Minn. July 13, 2015) .................................................. 15, 17

*Lees v. Anthem Ins. Cos.*,
  2015 WL 3645208 (E.D. Mo. June 10, 2015) ...................................................... 13

*Markos v. Wells Fargo Bank, N.A.*,
  2017 WL 416425 (N.D. Ga. Jan. 30, 2017)...................................................... 7, 17

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018) .............................................................................. 10

*Medoff v. CVS Caremark Corp.*,
  2016 WL 632238 (D.R.I. Feb. 17, 2016)................................................................ 5

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012)......................................................................................... 2, 15

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,
  311 F.R.D. 688 (S.D. Fla. 2015) ........................................................................... 14

*Phillips Randolph Enters., LLC v. Rice Fields*,
    2007 WL 129052 (N.D. Ill. Jan. 11, 2007) ............................................................. 11

*Roberts v. TJX Companies, Inc.*,
    2016 WL 8677312 (D. Mass. Sept. 30, 2016) ........................................................ 13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................. 16

*Schlesinger v. Wallace*,
    1973 WL 413 (N.D. Ala. Apr. 16, 1973) ............................................................... 13

*Schwyhart v. AmSher Collection Servs., Inc.*,
    2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ...................................................... 12

*Sheppard v. Consol. Edison Co.*,
    2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002)......................................................... 16

*Sherman v. Yahoo! Inc.*,
    2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) ........................................................ 9

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
    279 F.R.D. 442 (N.D. Ohio 2012) ........................................................................ 14

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ................................................................................. 13

*Sliwa v. Bright House Networks, LLC*,
    333 F.R.D. 255 (M.D. Fla. 2019).......................................................................... 10

*Snead v. Interim HealthCare of Rochester, Inc.*,
    286 F. Supp. 3d 546 (W.D.N.Y. 2018) ................................................................... 8

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) .................................................................................. 6

*Sylvester v. CIGNA Corp.*,
    401 F. Supp. 2d 147 (D. Me. 2005) ................................................................ 13, 15

*Thomas v. FTS USA, LLC*,
    2017 WL 1148283 (E.D. Va. Jan. 9, 2017) .......................................................... 14

*Tomeo v. CitiGroup, Inc.*,
   2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) ........................................................ 11

*Wilson v. Badcock Home Furniture*,
   329 F.R.D. 454 (M.D. Fla. 2018) ............................................................................. 10

*Wreyford v. Citizens for Transportation Mobility, Inc.*,
   2014 WL 11860700 (N.D. Ga. Oct. 16, 2014) .................................................. 13, 15

*Wright v. Nationstar Mortgage LLC*,
   2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ............................................................ 7

## **Statutes**

47 U.S.C. § 227 ............................................................................................................... 1

47 U.S.C. § 227(b)(1)(A)(iii) .............................................................................. 2, 9, 10

47 U.S.C. § 227(b)(3) .................................................................................................... 14

## **Other Authorities**

*In re Rules & Regs. Implementing the TCPA*,
   30 FCC Rcd. 7961 (2015) ........................................................................................... 2

The Court has preliminarily approved a class action settlement ("Settlement") between Plaintiff, on behalf of himself and others similarly situated, and Defendant Citizens Bank, N.A. ("Citizens").[1] The Settlement is an excellent result; it requires Citizens to pay $1,837,500 into a non-reversionary, common fund for the benefit of an approximately 283,000-member Settlement Class whose cell numbers Citizens called using its Avaya, Noble, or Nuance dialing systems between July 14, 2015 and December 31, 2019. Valid claimants are expected to receive $100 or more.

The Settlement is the result of the dedicated efforts of experienced and knowledgeable attorneys, who negotiated the proposed Settlement after mediation with a well-respected, third-party neutral. The Settlement was achieved only after Plaintiff's counsel had received substantive discovery as to the size and nature of the proposed class, which guaranteed informed and effective negotiations.

Class Counsel respectfully seek a fee award of $612,500, which is one-third of the common fund and is consistent with fees awarded in other TCPA class actions. Counsel also request that the Court reimburse expenses totaling $15,044.84, and grant an incentive award of $15,000 to Plaintiff Darren Kondash for his services to the Class as its Class Representative. The requested attorneys' fees and incentive award are reasonable and in line with applicable law in this Circuit. For these reasons, and as set forth herein, Plaintiff respectfully requests that the Court grant this motion.

## I.     SUMMARY OF THE LITIGATION

### A.     The TCPA.

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, was enacted in

---

[1]     A true and correct copy of the Settlement Agreement ("Agr.") was filed as Dkt. 43-1.

response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). Indeed, "[m]onth after month, unwanted robocalls … top the list of consumer complaints received by the [FCC]."[2] As relates to this case, the TCPA generally prohibits making any non-emergency call using an automatic telephone dialing system ("autodialer" or "ATDS") or an artificial or prerecorded voice to a cell phone number without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii).

### B. Summary of Case Proceedings.

After receiving multiple prerecorded robocalls from Citizens after asking not to be called, Plaintiff Kondash filed his class action complaint, alleging that Citizens caused nonconsensual calls to be made to the cell phone numbers of himself and others using an automatic telephone dialing system and prerecorded voice, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

The Parties engaged in thorough first- and third-party discovery. This discovery included Defendant's production of details about its applicable practices and the nature and cause of the alleged TCPA violations at issue. Exhibit A, Burke Decl. ¶ 14. Plaintiff filed a motion to compel information and documents concerning calls to putative class members that Citizens may have made without consent. Dkt. 25. Citizens filed an opposition brief, Dkt. 29, and then realized that certain information in its discovery responses and its brief were incorrect. *See* Dkt. 31. The parties then requested that the Court stay the matter so that Citizens could sort out its data issues, and so the parties could mediate. Dkt. 32, 35.

In February 20, 2020, the Parties participated in mediation with the Hon. Morton Denlow (Ret.) of JAMS, a well-known mediator with experience in resolving class actions, including under the TCPA. Dkt. 43-1, Agr. ¶ 1.02. In advance of this mediation, Class Counsel insisted

---

[2]     *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

that Citizens produce information and records relevant to the size and nature of the class. <u>Exhibit A</u>, Burke Decl. ¶ 14. The Parties conducted extensive settlement discussions, with counsel preparing and serving a detailed mediation brief on Defendant and the mediator beforehand. *Id.* Though a general term sheet was agreed to at the mediation, for several weeks thereafter, the Parties negotiated the specific terms of the Settlement for which the final product is now before the Court. *Id.* Plaintiff ultimately moved for preliminary approval April 13, 2020, which this Court granted on June 2, 2020. Dkt. 43, 44.

### C.   The Settlement.

The Settlement calls for Defendant to create a non-reversionary cash Settlement Fund of $1,837,500, *see* Dkt. 43-1, Agr. ¶ 4.02, to compensate the following Settlement Class:

> All subscribers and regular users of cellular telephone numbers that Citizens Bank, N.A. called through Citizens' Avaya, Noble, or Nuance dialing systems during the Class Period, limited to the Class List of approximately 283,264 unique cellular telephone numbers identified through Defendant's records. [Dkt. 44 ¶ 4.]

The Settlement's notice plan called for direct mail (and, where available, email) notice to Class Members on the Class List (including as may be identified through reverse-lookup to the extent necessary), a settlement website, online publication notice, and a toll-free hotline, administered by well-regarded administrator KCC. *See* Dkt. 43-1, Agr. ¶¶ 2.09, 8.02-8.05.

To obtain a *pro rata* share of the Settlement Fund, less notice/administration costs and any award to Class Counsel or the Class Representative, Class Members must submit a claim to the Settlement Administrator by mail or through the settlement website no later than September 30, 2020, certifying that they received Citizens' calls without consent. *Id.* ¶¶ 2.07, 9.02; Dkt. 44

at 8.[3] Class Members who do not exclude themselves will release claims tailored to the acts that gave rise to this case, i.e., "TCPA and related state analogue claims arising out of Citizens making calls through its Avaya, Noble, or Nuance dialing systems." Dkt. 43-1, Agr. ¶¶ 2.26, 13.01.[4]

> **D.    The Notice Informs Class Members About this Fee Request.**

Consistent with Fed. R. Civ. P. 23(h), the Class Notice advises Class Members of the proposed attorneys' fee award. Specifically, the notice informs Class Members that Class Counsel seek an award of "up to one-third of the Settlement Fund, or $612,500, plus costs[.]" Dkt. 43-1 at 39 (Mail Notice); *see also* Dkt. 43-1 at 46 (Long Form Notice). The Notice also directs Class Members to a website that repeats this information, and provides a toll-free telephone number for questions. *See* www.citizensbanktcpasettlement.com. Once filed, this motion will also be posted to the Settlement Website.

Neither counsel nor the administrator has yet to receive any class member objection. Exhibit A, Burke Decl. ¶ 15. Similarly, neither the U.S. Attorney General nor any state attorney general has contacted Plaintiff's counsel or otherwise objected to the proposed fee award. *Id.* In short, counsel is currently aware of no opposition to the proposed award. Plaintiff will of course update the Court if there are any objections (as the Class has until August 17, 2020, to object), and accordingly respond to them. Yet whether the number of objectors remains zero or a small number, a "the lack of any serious objection to the settlement agreement from members of the class weighs in favor of approving the settlement." *Medoff v. CVS Caremark Corp.*, 2016 WL

---

[3]        Money remaining after the initial distribution to valid claimants will be redistributed *pro rata* to those claimants who cashed their initial checks, to the extent administratively feasible, and ultimately to a Court-approved *cy pres* recipient. *Id.* ¶ 7.04(e).
[4]        "Claims arising from other means of communication are excluded; for example, text messages[,] … LiveVox calls, and fraud alert calls and texts." Dkt. 43-1, Agr. ¶ 2.26.

632238, at *6 (D.R.I. Feb. 17, 2016).

Given the excellent financial result for the Class, the reasonableness of the request when compared to approved awards in similar cases, and the risk and effort expended, Class Counsel's requested fee award should, respectfully, be granted.

## II.     THE PROPOSED FEE, COST, AND SERVICE AWARDS ARE REASONABLE.

### A.     The Fee Amount Is Reasonable as a Percentage of the Settlement Fund.

The U.S. Supreme Court and the First Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007). Awards of reasonable attorneys' fees from a "common fund" provide compensation that "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one" and spread the costs of the litigation "proportionately among those benefitted by the suit." *In re Tyco Int'l, Inc.*, 535 F. Supp. 2d at 265.

"While the First Circuit has not mandated use of the percentage-of-fund method, it has held that the approach 'offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace.'" *In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 4038942, at *6 (D.R.I. July 17, 2020) (quoting *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)). Indeed, the percentage-of-the-fund method in common fund cases is "the prevailing praxis" in this Circuit. *In re Thirteen Appeals*, 56 F.3d at 307 (noting it offers "distinct advantages"); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (finding, in TCPA case class case, that "the normal practice in consumer class actions is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery"). Consequently, the

5

percentage-of-the-fund method for determining attorneys' fees makes the most sense in this non-reversionary, common fund case, and Plaintiff respectfully requests its use here.

For guidance in establishing the reasonableness of a percentage-based fee award, courts in this Circuit have looked to the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

*In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 4038942, at *6 (citing *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005)). These factors confirm the reasonableness of the proposed fee award here.

### 1.      Class Counsel Achieved an Excellent Result for the Class.

"In common fund cases … the monetary amount of the victory is often the true measure of success[,]" *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993), and here the first factor relevant to the reasonableness of a fee award—"the size of the fund and the number of persons benefitted"—fully supports the requested fee.

The Parties' negotiated agreement provides a Settlement Fund of $1,837,500 for a discrete class of roughly 283,000 cell phone numbers Citizens called using its dialers at issue. Dkt. 43-1, Agr. ¶¶ 2.11, 2.28, 4.02. Considering the current claims rate, valid claimants are each expected to receive $100 or more.[5] This is an exceptional result, especially where $500 is the *maximum* class members could potentially obtain under the TCPA in statutory damages for a violation, 47 U.S.C. § 227(b)(3). This expected net amount to each class member exceeds what

---

[5]      ($1,837,500 Settlement Fund - $300,000 estimated notice/administration costs - $15,000 service award - $612,500 attorneys' fees - $15,044.84 expenses) ÷ (3,653 claims received as of July 27, 2020) = approximately $244.99. Plaintiff notes that this figure will likely go down somewhat as additional claims are received prior to the deadline of September 30, 2020.

has been approved in many other TCPA class action settlements.[6] Accordingly, this factor weighs strongly in favor of the proposed fee award.

> **2.      This Case Took a High Level of Skill and Experience, which Demanded Class Counsel's Resources in Lieu of Other Cases.**

The second and fifth factors courts consider when weighing a requested fee award—"the skill, experience, and efficiency of the attorneys involved" and "the amount of time devoted to the case by counsel"—also confirm that the fees sought are reasonable. Class Counsel achieved a settlement that confers substantial benefits on the Class despite litigating against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) ("[I]n assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.").

This settlement was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and complexity. Counsel were able to steer this case to a substantial TCPA recovery per class member, while avoiding the risk that contested class certification or summary judgment rulings, or trial, might fall in Defendant's favor. The risks were real: The complaint alleged that Citizens improperly used an "automatic telephone dialing system" to contact Plaintiff and the class, Dkt. 1, Compl. ¶ 19, an issue the United States Supreme Court squarely accepted for certiorari on July 9, 2020. *Facebook, Inc. v. Duguid*, __ S.Ct. __, 2020 WL 3865252 (U.S. Jul. 9, 2020). In any event, Counsel regularly engage in complex litigation involving consumer issues, including under the TCPA, and have been appointed class counsel in numerous cases. *See* <u>Exhibit A</u>, Burke Decl. ¶¶ 2-7.

---

[6]      *E.g., Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving $24 per claimant in a TCPA class action); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *2 (N.D. Ill. Aug. 29, 2016) (granting final approval to TCPA class settlement where anticipated claimant recovery was $45); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) ($34.60); *Kolinek*, 311 F.R.D. at 493 (approximately $30).

Not only that, but in the more than two years in which this case has been pending, Class Counsel have expended considerable resources in zealously advocating for the class' interests, including by investigating Plaintiff's and the class' claims pre-suit to prepare the Complaint, appearing in Court (Dkt. 15), opposing an overreaching protective order and coordinating with defense counsel to submit an agreed proposal (Dkt. 21, 22), conducting first- and third-party discovery (including issuing and responding to written discovery and taking the deposition of Citizens' Fed. R. Civ. P. 30(b)(6) deponent), moving to compel discovery from Defendant (Dkt. 25), reviewing Citizens' applicable data and the more than 8,000 pages of additional materials it produced in this action, submitting mediation position papers, negotiating the Settlement, and preparing associated filings. Exhibit A, Burke Decl. ¶ 13.

Class Counsel did this work on an entirely contingent-fee basis, and achieved this result without unnecessary motion practice and discovery battles that could have drained the Parties' and Court's resources. *See Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 560 (W.D.N.Y. 2018) (citing fact that favorable settlement was achieved "without great exertion of Court resources" as "a positive reflection of counsel's experience and the quality of the representation"). Likewise, that Class Counsel's fee arrangement was contingent "weighs in favor of the requested attorneys' fees award; "'[s]uch a large investment of money [and time] place[s] incredible burdens upon … law practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012). Class Counsels' firms are relatively small. *See* Exhibit A, Burke Decl. ¶ 11 (two lawyers). The amount of work Class Counsel can handle at any given time is accordingly limited, and their efforts in connection with, and commitment to, this matter, curtailed an ability to accept other work.

Thus, the skill and experience required, and the time and resources expended, support the

reasonableness of the proposed fee award, and it should thus, respectfully, be approved.

      **3.**      **This Case Presented Novel and Difficult Issues, and Significant Risk of Non-Recovery.**

The third and fourth factors applicable to the Court's fee determination—"the complexity and duration of the litigation" and "the risks of the litigation"—likewise support approval of Class Counsel's request.

Plaintiff's allegations in this case—based on nonconsensual prerecorded and autodialed calls—present unique difficulties at class certification. The Class List is comprised of consumers who, like Plaintiff Kondash, autodialed and received prerecorded message calls. But "prior express consent" is a complete defense to TCPA liability. 47 U.S.C. § 227(b)(1)(A)(iii). Figuring out who received calls after a do-not-call request on a litigation track would have proven to be extraordinarily difficult or impossible, absent settlement. Citizens' adversarial position in these proceedings was that, absent settlement, Plaintiff would be unable to establish a reliable means of identifying class members, and that determining such would devolve into individualized issues, precluding class certification. If, on an adversarial basis, the Court were to accept such arguments by Citizens, then there would be **_no_** relief for the class here. The parties resolved the issue by having claimants self-identify by certifying that they received calls without consent. *See* Dkt. 43-1 at p. 30 (claim form). Past TCPA class cases have been denied certification based on the nature of the defendant's data. *E.g., Luster v. Green Tree Servicing, LLC*, No. 14-1763 (N.D. Ga. Sept. 5, 2018) (accepting general assertions by defendant that it obtains consent in a variety of manners in finding lack of predominance, despite fact that defendant admittedly neglected to track such in its records); *Sherman v. Yahoo! Inc.*, 2015 WL 5604400, at *6 (S.D. Cal. Sept. 23, 2015) (declining to certify class where plaintiff proposed identifying class members through a reverse-lookup process, finding that "Plaintiff has not met her burden of demonstrating that there

9

is an administratively feasible method of identifying the putative class members"); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 280 (M.D. Fla. 2019) (denying motion to certify in TCPA case, finding that "determining whether Defendants called a class member after designating that number as a 'wrong number' will require a case-by-case analysis of the facts"); *cf. Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 460-61 (M.D. Fla. 2018).[7]

 Not only that, but the law governing the TCPA has been in a state of extreme flux during the pendency of this action. Aside from the Supreme Court accepting certiorari in *Facebook, Inc. v. Duguid*, __ S.Ct. __, 2020 WL 3865252 (U.S. Jul. 9, 2020), the Supreme Court considered Industry arguments that the entire statute – including the provisions upon which this case is based – should be invalidated as unconstitutional earlier this month, in *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335 (2020).

The TCPA "lay of the land" was no less volatile before 2020. For example, in 2018, the D.C. Circuit vacated part of an FCC declaratory ruling, including as to its interpretation of what constitutes an automatic telephone dialing system ("ATDS or "autodialer") under the TCPA, directly applicable to Plaintiff's claims here under 47 U.S.C. § 227(b)(1)(A)(iii). *ACA Int'l v. FCC*, 885 F.3d 687, 703 (D.C. Cir. 2018). A Circuit split on the definition has since developed, with some courts imposing a restrictive interpretation that could arguably exclude nearly all equipment that has been considered to be an autodialer for the past decade or more. While the Ninth, Second, and Sixth Circuits would permit this case's autodialer claims to proceed, *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018); *Duran v. La Boom Disco, Inc.*,

---

[7]      *But see Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) ("If the Court were to deny certification because Dish does not keep an accurate list as the regulations require and Dish itself cannot identify which individuals on the list actually requested not to be called, it would create the perverse incentive for entities to keep poor records and to violate the TCPA's clear requirement that such a list be kept.").

955 F.3d 279, 287 (2d Cir. 2020); *Allan v. Pa. Higher Educ. Assistance Agency*, 2020 WL 4345341, at \*9 (6th Cir. July 29, 2020), the Third, Seventh and Eleventh Circuits likely would not. *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306 (11th Cir. 2020).

Assuming Plaintiff prevailed on certification and the merits, the resulting damage award itself presents a novel issue. Some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *E.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, 2011 WL 1706061, at \*4 (N.D. Ill. May 5, 2011) ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, 2007 WL 129052, at \*3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [Defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Given the uncertainty surrounding this area of the TCPA, the unique nature of Citizens' class-related data, and the risk that Plaintiff could have lost at class certification, summary judgment, or trial, this case surely presented both novel and difficult issues. The risk here was real: Undersigned counsel have at times lost dispositive motions or class certification in TCPA actions, despite expending their best efforts – not to mention significant time and resources – into what they believed were strong cases. *See, e.g., Tomeo v. CitiGroup, Inc.*, 2018 WL 4627386, at \*1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Luster v. Green Tree Servicing, LLC*, No. 14-1763 (N.D. Ga. Sept. 5, 2018) (denying class certification in TCPA case after four years of litigation).

Counsel Class believe these cases were incorrectly decided, and cites them to demonstrate the real risk of nonrecovery.

Class Counsel assumed the risk of this litigation, including not only the allotment of time, but also the advancement of financial costs and expenses necessary to ultimately prosecute this matter zealously on behalf of Plaintiff and the class, on a fully contingent basis. As a result, the risk Class Counsel assumed in litigating this matter given the novelty and nature of this action, while at the same time keeping expenditure of judicial resources to a minimum through effective, efficient advocacy, was significant. These factors thus support the fee award.

> **4.      The Requested Fee Is Consistent with Other Consumer Class Settlements.**

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.*, 444 U.S. at 478. Class Counsel's request for a one-third percentage award is well-supported, and thus the sixth factor applicable to fee requests, "awards in similar cases," also favors approval.

Indeed, a one-third percentage award has been approved in numerous analogous TCPA class cases. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming fee award in TCPA class settlement for "36% of the first $10 million"); *Hanley v. Tampa Bay Sports & Entm't LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (finding, in TCPA class case, that courts "routinely approve fee awards of one-third of the common settlement fund"); *Schwyhart v. AmSher Collection Servs., Inc.*, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (same); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 807 (N.D. Ill. Feb. 15, 2015) (awarding 36% of the total common fund for fees for the first $10,000,000 of the settlement); *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla.

May 24, 2019) (awarding one-third fees plus costs to class counsel in TCPA settlement); *Wreyford v. Citizens for Transportation Mobility, Inc.*, 2014 WL 11860700, at *2 (N.D. Ga. Oct. 16, 2014) (awarding 33 1/3% fees plus costs in TCPA class action settlement); *Guarisma v. ADCAHB Med. Coverages, Inc.*, 2015 WL 13650934, at *4 (S.D. Fla. June 24, 2015) (approving one-third fee award plus costs in TCPA class action settlement); *Lees v. Anthem Ins. Cos.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (34% fee award in TCPA class action).

Not only that, but a one-third contingent fee is the gold standard for attorney fee agreements in general non-fee shifting tort litigation involving personal injury and other consumer damage cases. *See Schlesinger v. Wallace*, 1973 WL 413, at *12 (N.D. Ala. Apr. 16, 1973) ("It is commonplace, in personal injury actions, for the attorney and his client to agree upon a contingent fee ranging from one-third to one-half whatever recovery is obtained."); *see also Curtis v. Scholarship Storage Inc.*, 2016 WL 3072247, at *4 (D. Me. May 31, 2016) ("A one-third contingent fee is common in wage-and-hour cases."). "Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). Thus, this factor favors the proposed fee award.[9]

### 5. Public Policy Considerations Support the Fee Request.

The final relevant factor—"public policy considerations"—also supports the requested

---

[9]      Fees typically awarded as to non-TCPA common fund settlements also support Plaintiff's one-third percentage request here. *E.g., Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) ("the request for an award of one-third of the common fund reflects a fee that is customary"); *Gordan v. Mass. Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) (finding one-third fee request "fair and reasonable"); *In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 4038942, at *7 (finding one-third fee request "reasonable and appropriate"); *Sylvester v. CIGNA Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005) (awarding class counsel attorney's fees of 33 1/3% of recovery); *Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (same).

fees. "Incentives for counsel to undertake worthy class action lawsuits are important because class actions serve to provide relief when it would be inefficient for an individual to pursue a claim." *Hooker v. Sirius XM Radio, Inc.*, 2017 WL 4484258, at *8 (E.D. Va. May 11, 2017) (citing *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338 (1980)). "Class counsel play a vital role in protecting the rights of class members." *Thomas v. FTS USA, LLC*, 2017 WL 1148283, at *2 (E.D. Va. Jan. 9, 2017) (recognizing that "Congress relies on the private attorney-general concept" to enforce consumer protections statutes). Accordingly, a "central factor in fixing the amount of attorneys' fees is to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class[.]" *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009); *see also Thomas*, 2017 WL 1148283, at *2 ("Due to the commendable work that Class Counsel undertook to protect consumers, the Court must ensure that counsel receive compensation for their work."). As such, adequately compensating Class Counsel here, in line with numerous other TCPA class settlements, supports that public policy by ensuring a continued incentive to advocate on behalf of consumers' telecommunications rights.

This point is all the more important considering the fact that the TCPA is not fee-shifting, and the relatively small individual damages contemplated under the law—i.e., base damages of $500 per violation, *see* 47 U.S.C. § 227(b)(3)—provides little incentive for most consumers to pursue their claims individually, to the extent they are even aware of such rights. *See Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (since each class member is unlikely to recover more than a small amount,

14

they are unlikely to bring individual suits under the TCPA). Consequently, public policy considerations support the requested award, as Class Counsel would not be able to enforce the TCPA on behalf of consumers—and Congress' goal of preventing intrusive and unwanted phone calls, *see Mims*, 565 U.S. at 372—if they are not fairly compensated for their work.

**B.     The Expenses Incurred Are Reasonable and Should Be Approved.**

"It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *3 (D. Minn. July 13, 2015) (citations omitted); *see also In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("[L]aw firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax.").

The Settlement permits Class Counsel to seek recovery of expenses incurred on behalf of the Class, Dkt. 29-2, Agr. ¶ 15.1. The actual figure totals $15,044.84, largely consisting of expenses related to mediation, travel, and discovery, including a $1,500 estimate for travel to the in-person final approval hearing, which will be adjusted accordingly in the proposed final order. *See* Exhibit A, Burke Decl. ¶ 16. None of the costs sought are for overhead-type items such as photocopying, research, telephone, etc. *Id.* Additionally, because this case was prosecuted on an entirely contingent-fee basis, *Id.* ¶ 12, Class Counsel had every incentive to keep costs down. Thus, counsel's expenses also should be approved. *E.g.*, *Sylvester*, 401 F. Supp. 2d at 151 (granting 1/3 percentage fee award, plus expenses); *Wreyford*, 2014 WL 11860700, at *2 (same).

C.      **The Class Representative's Incentive Award Request Is Fair, Reasonable, and Supported by Law.**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 4038942, at *8 ("This settled practice encourages entities and individuals to agree to serve as the named class representative in a complex class action, including to be exposed to potentially substantial expenses in responding to discovery, monitoring the litigation and participating at trial."). These awards "are not uncommon and can serve an important function in promoting class action settlements." *Sheppard v. Consol. Edison Co.*, 2002 WL 2003206, at *5 (E.D.N.Y. Aug. 1, 2002).

Without Plaintiff serving as class representative, the Class would not have been able to recover anything. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *5 (N.D. Iowa Nov. 9, 2011) ("[E]ach … plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members. The requested incentive award for each named plaintiff recognizes this commitment and the benefits secured for other class members, and is thus reasonable under the circumstances of this case.").

The class representative here, Darren Kondash, spent considerable time pursuing Class Members' claims. In particular, Mr. Kondash communicated with counsel to keep apprised of this matter, participated in the pre-suit investigation and discovery process, including producing documents and responding to information requests, and ultimately approved and executed the Settlement Agreement. Exhibit A, Burke Decl. ¶ 17. The Settlement Agreement specifically contemplates him seeking an incentive award for his efforts. *See* Dkt. 43-1, Agr. ¶ 5.03.

Given all of the foregoing, the requested incentive award of $15,000 is fair and reasonable, especially when compared to other approved awards. *E.g., Cabot E. Broward 2 LLC*

16

*v. Cabot*, 2018 WL 5905415, at *11 (S.D. Fla. Nov. 9, 2018) (awarding each class representative incentive award of $50,000, citing cases); *Jones v. I.Q. Data Int'l, Inc.*, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) (approving $20,000 incentive award in TCPA case); *Krueger*, 2015 WL 4246879, at *3 (approving $25,000 incentive awards for each named plaintiff); *Markos*, 2017 WL 416425, at *3 (awarding $20,000 incentive award in TCPA case).

## III.   <u>CONCLUSION</u>

Class Counsel's proposed fee award is a reasonable percentage of the Settlement Fund. Thus, for the foregoing reasons, Plaintiff respectfully requests that the Court award Class Counsel $612,500 in attorneys' fees and $15,044.84 in costs and expenses, as well as an incentive award of $15,000 to Plaintiff Kondash for his service as Class Representative.

Respectfully submitted,

DARREN KONDASH, individually and
on behalf of others similarly situated

Dated: July 31, 2020

By:  _/s/ Christopher M. Lefebvre_
     Christopher M. Lefebvre (#4019)
     CONSUMER & FAMILY LAW CENTER OF
     CLAUDE F. LEFEBVRE & CHRISTOPHER M.
     LEFEBVRE, P.C.
     Two Dexter Street
     Pawtucket, RI 02860
     Telephone: (401) 728-6060
     chris@lefebvrelaw.com

     Alexander H. Burke (*pro hac vice*)
     BURKE LAW OFFICES, LLC
     909 Davis Street, Suite 500
     Evanston, IL 60201
     Telephone: (312) 729-5288
     aburke@burkelawllc.com

     *Counsel for Plaintiff*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 31, 2020, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Christopher M. Lefebvre*

18