# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DARREN KONDASH, individually and on behalf of others similarly situated, | Case No. 1:18-cv-00288 |
| Plaintiff, | |
| v. | |
| CITIZENS BANK, NATIONAL ASSOCIATION, | Hon. Judge William E. Smith<br>Hon. Mag. Judge Lincoln D. Almond |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
## INCORPORATED MEMORANDUM IN SUPPORT

## <u>TABLE OF CONTENTS</u>

**Page**

STRUCTURE OF THE SETTLEMENT .................................................................................1

CLAIMS ADMINISTRATION ...........................................................................................3

RESPONSE OF THE CLASS ...............................................................................................4

ARGUMENT ........................................................................................................................5

I.      The Settlement Meets All Requirements for Final Approval. ...............................5

        A.      The Class Representative and Class Counsel have adequately represented the Class. ..................................................................................................................6

        B.      The Settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion. ................................................................7

        C.      The Settlement provides substantial relief for the Class. ............................8

                1.      Diverse and substantial legal and factual risks weigh in favor of settlement. ...........................................................................................9

                2.      The monetary terms of the Settlement fall favorably within the range of prior TCPA class action settlements, and the method of relief distribution of that relief is effective and equitable. .......................12

                3.      The proposed attorneys' fees are fair and reasonable. ....................15

        D.      The Distribution of Notice Was Consistent with Due Process Requirements. ......17

II.     Certification of the Settlement Class Is Appropriate. ..........................................18

        A.      The Rule 23(a) requirements are satisfied. .................................................18

        B.      The Rule 23(b)(3) requirements are satisfied. ............................................20

III.    The Court Should Grant the Class Representative's Requested Incentive Award. ...........21

CONCLUSION ...................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ............................................................................... 10

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
    2011 WL 1706061 (N.D. Ill. May 5, 2011) ........................................................... 12

*Allan v. Pa. Higher Educ. Assistance Agency*,
    2020 WL 4345341 (6th Cir. July 29, 2020) ........................................................... 10

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................... 20

*Baptista v. Mutual of Omaha Ins. Co.*,
    859 F. Supp. 2d 236 (D.R.I. 2012) .......................................................................... 9

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
    140 S. Ct. 2335 (2020) .......................................................................................... 10

*Bayat v. Bank of the West*,
    2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ......................................................... 5

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) ................... 12

*Brotherton v. Cleveland*,
    141 F. Supp. 894 (S.D. Ohio 2001) ......................................................................... 9

*Bussie v. Allamerica Fin. Corp.*,
    1999 WL 342042 (D. Mass. May 19, 1999) ........................................................... 21

*Charvat v. Valente*,
    2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) .......................................................... 22

*Cooper v. Nelnet, Inc.*,
    2015 WL 12839778 (M.D. Fla. Aug. 4, 2015) ....................................................... 22

*Couser v. Comenity Bank*,
    125 F. Supp. 3d 1034 (S.D. Cal. 2015) .................................................................. 13

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .................................................................................... 8

*Del Valle v. Glob. Exch. Vacation Club*,
    320 F.R.D. 50 (C.D. Cal. 2017) ............................................................................ 11

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. 2018) .................................................................................. 10

*Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ......................................................................... 21

*Duran v. La Boom Disco, Inc.*,
    955 F.3d 279 (2d Cir. 2020) .................................................................................. 10

*Elwert, Inc., DC v. All. Healthcare Servs., Inc.*,
    2018 WL 4539287 (N.D. Ohio Sept. 21, 2018) ..................................................... 16

*Facebook, Inc. v. Duguid*,
    2020 WL 3865252 (U.S. Jul. 9, 2020) ................................................................... 10

*Gadelhak v. AT&T Servs., Inc.*,
    950 F.3d 458 (7th Cir. 2020) ................................................................................ 10

*García-Rubiera v. Calderón*,
    570 F.3d 443 (1st Cir. 2009) ................................................................................ 18

*Glasser v. Hilton Grand Vacations Co.*,
    948 F.3d 1301 (11th Cir. 2020) ............................................................................ 10

*Gordan v. Mass. Mut. Life Ins. Co.*,
    2016 WL 11272044 (D. Mass. Nov. 3, 2016) ........................................................ 16

*Gordon v. Hunt*,
    117 F.R.D. 58 (S.D.N.Y. 1987) .............................................................................. 4

*Grannan v. Alliant Law Grp.*, P.C.,
    2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ............................................................ 5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................. 12

*Hashw v. Dep't Stores Nat'l Bank*,
  182 F. Supp. 3d 935 (D. Minn. 2016) ...................................................... 13

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................... 9

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ..................................................... 7, 13

*In re Fid./Micron Sec. Litig.*,
  167 F.3d 735 (1st Cir. 1999) ................................................................... 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...................................................................... 14

*In re Loestrin 24 Fe Antitrust Litig.*,
  2020 WL 4038942 (D.R.I. July 17, 2020) ................................................ 16

*In re Loestrin 24 Fe Antitrust Litig.*,
  2020 WL 5201275 (D.R.I. Sept. 1, 2020) ................................................... 8

*In re Loestrin 24 FE Antitrust Litig.*,
  410 F. Supp. 3d 352 (D.R.I. 2019) ........................................................... 18

*In re Lupron Mktg. & Sales Practices Litig.*,
  228 F.R.D. 75 (D. Mass. 2005) ................................................................ 14

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009) .................................................................... 6, 8

*Johnson v. Brennan*,
  2011 WL 1872405 (S.D.N.Y. May 17, 2011) ............................................. 8

*Juris v. Inamed Corp.*,
  685 F.3d 1294 (11th Cir. 2012) ................................................................. 4

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ..................................................... 5, 7, 13

*Krakauer v. Dish Network L.L.C.*,
  311 F.R.D. 384 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) ................................. 11

*Kron v. Grand Bahama Cruise Line, LLC*,
  328 F.R.D. 694 (S.D. Fla. 2018) ........................................................................................ 19

*Ladd v. Brickley*,
  158 F.2d 212 (1st Cir. 1946) .............................................................................................. 14

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
  2017 WL 6460244 (D. Mass. June 8, 2017) ...................................................................... 21

*Lopez v. Hayes Robertson Grp., Inc.*,
  2015 WL 5726940 (S.D. Fla. Sept. 29, 2015) ................................................................... 17

*Malta v. Fed. Home Loan Mortg. Corp.*,
  No. 10-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) .................................................. 20

*Markos v. Wells Fargo Bank, N.A.*,
  2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ....................................................................... 13

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018) ........................................................................................... 10

*Matamoros v. Starbucks Corp.*,
  699 F.3d 129 (1st Cir. 2012) .............................................................................................. 19

*McCrary v. Elations Co.*,
  2015 WL 12746707 (C.D. Cal. Aug. 31, 2015) ................................................................. 18

*Medoff v. CVS Caremark Corp.*,
  2016 WL 632238 (D.R.I. Feb. 17, 2016) ...................................................................... 12, 17

*Michel v. WM Healthcare Solutions, Inc.*,
  2014 WL 497031 (S.D. Ohio Feb. 7, 2014) ........................................................................ 5

*Milliron v. T-Mobile USA, Inc.*,
  2009 WL 3345762 (D.N.J. Sept. 14, 2009) ......................................................................... 8

*Moser v. Health Ins. Innovations, Inc.*,
  2019 WL 3719889 (S.D. Cal. Aug. 7, 2019) ..................................................................... 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 9

*Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*,
   2020 WL 1495903 (D. Mass. Mar. 27, 2020) ............................................ 6

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,
   311 F.R.D. 688 (S.D. Fla. 2015) .............................................................. 20

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003) ................................................................ 19

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..................................................... 9

*Prater v. Medicredit, Inc.*,
   2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) ........................................... 22

*Reppert v. Marvin Lumber & Cedar Co.*,
   359 F.3d 53 (1st Cir. 2004) ...................................................................... 17

*Rivero Souss v. Banco Santander S.A.*,
   No. 09-2305, 2011 WL 13350165 (D.P.R. June 9, 2011) ....................... 14

*Rose v. Bank of Am. Corp.*,
   No. 11-2390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .................. 13

*Sadowski v. Med1 Online, LLC*,
   2008 WL 2224892 (N.D. Ill. May 27, 2008) ................................... 13, 20

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
   2010 WL 2486346 (C.D. Cal. June 15, 2010) ........................................... 8

*Schwyhart v. AmSher Collection Servs., Inc.*,
   2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ........................................ 16

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
   279 F.R.D. 442 (N.D. Ohio 2012) ........................................................... 13

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*,
   2013 WL 6498245 (E.D. Mo. Dec. 11, 2013) ........................................ 13

- vi -

*Walco Investments, Inc. v. Thenen*,
    168 F.R.D. 315 (S.D. Fla. 1996) ........................................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................................... 14

*Wilkins v. HSBC Bank Nevada, N.A.*,
    2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ............................................................ 5

*Wreyford v. Citizens for Transp. Mobility, Inc.*,
    2014 WL 11860700 (N.D. Ga. Oct. 16, 2014) ...................................................... 16

*Wright v. Nationstar Mortgage LLC*,
    2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ........................................................ 13

## **Statutes**

47 U.S.C. § 227 ............................................................................................................... 1

47 U.S.C. § 227(b)(3) .................................................................................................... 13

## **Other Authorities**

Fed. Judicial Ctr.,
    Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide (2010) ..... 4

Manual for Complex Litig. ........................................................................................ 5, 18

McLaughlin on Class Actions (8th ed. 2011) ................................................................ 7

Newberg on Class Actions ...................................................................................... 5, 12

## **Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 16

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 18

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 18

Fed. R. Civ. P. 23(a)(3) ........................................................................................................ 19

Fed. R. Civ. P. 23(a)(4) ........................................................................................................ 19

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................... 17

Fed. R. Civ. P. 23(e) .............................................................................................................. 5

Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 5, 6

Fed. R. Civ. P. 23(e)(2)(A) .................................................................................................... 6

Fed. R. Civ. P. 23(e)(2)(B) .................................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................... 9

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................................ 9

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................................ 15

Fed. R. Civ. P. 23(e)(2)(D) .............................................................................................. 9, 15

This action alleges Citizens made nonconsensual, autodialed and prerecorded calls to be made to consumers' cell phone numbers, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii).  After arm's-length negotiations, and with a full-day of in-person assistance of well-respected mediator Hon. Morton Denlow (Ret.), Plaintiff Darren Kondash  and Defendant Citizens Bank, N.A. ("Citizens") agreed to a non-reversionary, $1,837,500 class settlement in this case.

The Court granted preliminary approval to the settlement on June 2, 2020, Dkt. 44, approving of the terms of the settlement and the parties' proposed notice plan. Pursuant to the Court-approved notice plan, direct mail or email notice of the Settlement was sent to the Class, supplemented with internet notice via a Facebook campaign and an interactive website. The reaction of the Class has been overwhelmingly positive: Zero objections have been filed, and only one Class Member has opted out.  If validated, the 20,178 claims are expected to result in a per-claim payout of approximately $44 per claimant, well within the $30-$60 range anticipated at preliminary approval, *see* Dkt. 43. Following notice under CAFA, no state attorney general, nor the Attorney General of the United States, has objected.

The Settlement is an excellent result for the Class, particularly in view of the risks and delays involved in continued litigation and the recovery per claimant.  Considering the overwhelmingly favorable support for the Settlement from the Class Members, Plaintiff respectfully requests that the Court finally approve the Settlement, approve Plaintiff's motion for attorneys' fees, expenses, and an incentive award (requested separately in a fee petition at Dkt. 45) in its entirety, and enter a final judgment and order dismissing this case.

## STRUCTURE OF THE SETTLEMENT

The Settlement provides relief to the following Settlement Class:

1

> All subscribers and regular users of cellular telephone numbers that Citizens Bank, N.A. called through Citizens' Avaya, Noble, or Nuance dialing systems during the Class Period, limited to the Class List of approximately 283,264 unique cellular telephone numbers identified through Defendant's records.

Dkt. 44, Preliminary Approval Order ¶ 4. The parties provided the Settlement Administrator with the Class List of 283,264 unique cell phone numbers, including available contact information for the associated consumers available through Citizens' own records. Ex. A, KCC Decl. ¶ 3. Per the reverse-lookup process contemplated under the Agreement, Dkt. 43-1, Agr. ¶ 8.02, the Settlement Administrator ran a reverse-lookup on any records missing contact information and removed duplicates, to identify a total of 277,847 unique records with either a valid email address, physical address, or both. *See* Ex. A, KCC Decl. ¶¶ 3-4.

Notice was effectuated by sending direct notice to all addresses and emails obtained through these reverse lookups, as well as online targeted notice through Facebook, to any accounts associated with telephone numbers in the class list. The claims administrator also set up an interactive website at www.CitizensBankTCPASettlement.com, where potential claimants could review the complaint and other case-related documents, the full settlement agreement and long-form notice, and submit claims. Finally, the claims administrator had a toll-free number where potential claimants could hear about the settlement, and use Interactive Voice Recognition to obtain questions to frequently asked questions.

The Settlement relief will be allocated as follows: First, not later than seven business days after the Judgment becomes final and non-appealable, Citizens shall pay any funds remaining due under the Agreement. Dkt. 43-1, Agr. ¶¶ 2,17, 2.22, 7.03. Next, no later than thirty days after the Funding Date, the Settlement Administrator will make any awarded payment to Class Counsel and the Class Representative, and mail approved claimants a check on a *pro rata* basis, less the cost of Attorney's Fees and Costs, Notice and Administration costs, and any

2

incentive award. *Id.* ¶¶ 7.04(a)-(c). Finally, amounts remaining in the Settlement Fund after the initial round of distribution will be redistributed to those claimants who cashed their initial checks, to the extent administratively feasible; otherwise, such funds will be distributed to a Court-approved *cy pres* recipient. *Id.* ¶¶ 7.04(d)-(e) (proposing National Local Initiatives Support Corporation, with a specific designation to the Boston and Philadelphia regions).

## CLAIMS ADMINISTRATION

On June 2, 2020, this Court granted preliminary approval to the Settlement. Dkt. 44. The Parties retained KCC Class Action Services, LLC ("KCC") as Settlement Administrator to implement a comprehensive notice plan for Class Members. *See* Dkt. 44, Order ¶¶ 8-9 (approving KCC and ordering notice to Class Members).

Pursuant to this notice plan, and after a reverse-lookup to capture any records on the Class List for which contact information was unavailable from Citizens' records, KCC mailed 276,793 postcard notices to persons whose numbers appeared on the Class List, in the form approved by the Court. Ex. A, KCC Decl. ¶ 4. Of these, a total of 1,949 notices were returned by the U.S. Postal Service with forwarding addresses, which KCC immediately caused to be re-mailed. *Id.* ¶ 5. KCC ran a search for updated addresses for the 16,673 postcard notices returned as undeliverable, and updated and re-mailed the notice to 4,860 Class Members. *Id.* ¶ 6. KCC also succeeded in sending the Court-approved email notice to 54,816 email addresses associated with individuals on the Class List, and provided additional notice through an online Facebook ad campaign, which resulted in 488,029 impressions. *Id.* ¶¶ 7, 9. If reverse lookup efforts resulted in both an email and a physical address for any particular class member, direct notice went out through both means.

All told, direct mail or email notice had an estimated reach of approximately 95.4%. *Id.* ¶

8. This percentage exceeds established due process and Rule 23 guideline quotas for class notice. *See* Fed. Judicial Ctr., Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide (2010), *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of between 70-95%); *but see Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (noting that "due process does not require that class members actually receive notice[,]"citing *Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987), for stating that a "combination of mailed notice to all class members who can be identified by reasonable effort and published notice to all others is the long-accepted norm in large class actions").

In addition, KCC also established a website, www.citizensbanktcpasettlement.com, by which Class Members could view settlement documents and make claims, and set up a toll-free phone number through which Class Members could receive additional information about the Settlement. Ex. A, KCC Decl. ¶¶ 10-11. KCC also provided notice to relevant governmental entities pursuant to the Class Action Fairness Act ("CAFA"). *Id.* ¶ 2.

There have been no objections to any aspect of the Settlement, from any source. *Id.* ¶ 14.

**RESPONSE OF THE CLASS**

Pursuant to the Court's Preliminary Approval Order, Class Members had until September 30, 2020, to submit a claim under the Settlement. Dkt. 44, Order ¶ 21. As of the date of this motion, KCC has received a total of 20,356 timely claims, although 178 were untimely.[1] Ex. A, KCC Decl. ¶ 12. KCC is currently performing a duplicate and fraud review, and will supplement the status of claims submissions in advance of or at the Final Approval Hearing. *Id.*

Based on the 283,264 unique records on the Class List and total of 20,356 claims

---

[1]     Class Counsel take no position on whether the Court ultimately chooses to accept or reject these untimely claims.

submitted, the claims rate is approximately 7.19%, which meets or exceeds claims rates in other approved consumer class action settlements. *Id.*; *see Bayat v. Bank of the West*, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.,* 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Grannan v. Alliant Law Grp.*, P.C., 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (under 3%).

That roughly twenty thousand Class Members approved the benefits provided by Settlement enough to submit a claim, with not a single objection and only one opt-out, represents a positive response from the class of persons who stand to benefit. Thus, for this reason and as further detailed below, the Settlement should be approved.

## ARGUMENT

### I.    The Settlement Meets All Requirements for Final Approval.

Under Fed. R. Civ. P. 23(e), a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Newberg on Class Actions, § 11:50.

Under Rule 23, the first step in the class settlement approval process is a preliminary determination that the Court will likely be able to approve the proposal and certify the class, which the Court decided on June 2, 2020. Dkt. 44. After class notice, the second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2); Manual for Complex Litig., § 21.633-

34.  Where, as here, the proposed settlement would bind class members, it may only be approved

after a hearing and a finding that it is fair, reasonable, and adequate, after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### A.    The Class Representative and Class Counsel have adequately represented the Class.

Whether "the class representatives and class counsel have adequately represented the

class" is a relevant factor to consider when deciding whether to approve a proposed class

settlement. Fed. R. Civ. P. 23(e)(2)(A). "The duty of adequate representation requires counsel to

represent the class competently and vigorously and without conflicts of interest with the class."

*Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*, 2020 WL 1495903, at *3 (D. Mass. Mar. 27, 2020)

(quoting *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009)).

"The court must be satisfied that the interests of the class representatives do not conflict with the

interests of any of the class members, … and that Plaintiffs' counsel are qualified and

experienced and provided vigorous representation during the course of the case." *Id.*

Here, Plaintiff Kondash's claims are aligned with the claims of the other Class Members.

He thus had every incentive to vigorously pursue the claims of the Class, as he has done by

remaining actively involved in this matter since its inception, participating in discovery, and

remaining involved in the settlement process. Ex. B, Burke Decl. ¶ 15. In addition, Plaintiff retained the services of counsel with extensive experience in litigating consumer class actions, and TCPA actions in particular. *Id.* ¶¶ 2-11.

The Settlement was achieved after the exchange of pertinent discovery and investigation into the extent and nature of Citizens' calls to the Class, pre-mediation position statements outlining the Parties' respective positions, a formal mediation with a well-respected and experienced mediator, and weeks of back-and-forth between counsel for the Parties thereafter to finalize the Agreement. Ex. B, Burke Decl. ¶ 14. Plaintiff was thus fully apprised of the facts, risks, and obstacles involved with continued litigation, and did everything possible to get the best possible result for Class Members. The approximately $44 per claim recovery is both consistent with other TCPA settlements, and is in line with the $30-$60 estimate provided in the notices. *Compare, e.g., Kolinek*, 311 F.R.D. at 494 ($30/claimant); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) ($34.60/claimant).

Plaintiff and his counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. *Id.* ¶ 16. Class Counsel also believe that the benefits of the Parties' Settlement far outweigh the delay and considerable risk of proceeding to a contested class certification and trial. *Id.* Because Plaintiff and Class Counsel have adequately represented the Class, this factor supports approval.

### B. The Settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.

Whether "the proposal was negotiated at arm's length" is also relevant to the class settlement approval determination. Fed. R. Civ. P. 23(e)(2)(B). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *In re Pharm. Indus. Average Wholesale*

*Price Litig.*, 588 F.3d at 32-33 ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.").[2]

Here, the Settlement Agreement resulted from good faith, arms'-length settlement negotiations over several weeks, including through an in-person mediation session with a well-respected mediator, Hon. Morton Denlow (Ret.) of JAMS, on February 20, 2020.[3] Dkt. 43-1, Agr. ¶ 1.02; Ex. B, Burke Decl. ¶ 14. In advance of the mediation, Plaintiff received over 8,000 of pages of documents and data in response to discovery requests to Citizens (including necessary information regarding the scope and nature of the class and calling at issue), and the Parties submitted detailed mediation submissions setting forth their respective views as to the strengths of their cases. *Id.* And on top of that, the Settlement itself was subject to additional confirmatory discovery as to the Class List, to ensure its accuracy. *See* Dkt. 43-1, Agr. ¶ 4.05. Accordingly, the parties negotiated their settlement at arm's-length, and absent fraud or collusion. *See In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 5201275, at *2 (D.R.I. Sept. 1, 2020) ("The Settlement …was not the product of collusion … but rather was the result of b*ona fide* and arm's-length negotiations conducted in good faith between … counsel … with the assistance of a mediator.").

**C.    The Settlement provides substantial relief for the Class.**

The relief provided by the Settlement—a non-reversionary, $1,837,500 Settlement

---

[2] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

[3]        *See* https://www.jamsadr.com/denlow.

Fund—is substantial and adequate, taking into account the risks, the method of distribution to the Class and similarity to other approved TCPA class settlements, the equitable treatment relative to each Class Member, and the reasonableness of Class Counsel's requested attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C)-(D). Indeed, the overwhelmingly positive response from the Class, with <u>zero</u> objections and only a single opt-out, further demonstrates that this proposed relief is fair, reasonable, and adequate. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement.").[4]

As further detailed below, the proposed Settlement satisfies all remaining factors supporting approval under Fed. R. Civ. P. 23(e), and this motion should, therefore, be granted.

### 1.    Diverse and substantial legal and factual risks weigh in favor of settlement.

The "costs, risks, and delay of trial and appeal," in light of the relief afforded under the Settlement, further support its approval. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also Baptista v. Mutual of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240-41 (D.R.I. 2012) (identifying "the risks of establishing liability, ... damages, [and] ... maintaining the class action through the trial" as relevant approval considerations, as well as "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation") (citation omitted).

While Plaintiff strongly believes in his claims, Citizens asserted a number of defenses and arguments that, absent settlement, raised significant risk of affecting any recovery for

---

[4]     *See also, e.g., Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

himself and the Class.

For example, the law applicable to the TCPA has been subject to much turmoil over the past several years. While this case was pending, the Supreme Court accepted *certiorari* to consider the constitutionality of the entire statute. And while that case, *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020), was ultimately resolved in consumers' favor less than three months *after* the Parties reached their Agreement, Plaintiff could not at the time discount the possibility that the Court would rule differently, making this case worthless. (severing portion of TCPA, but otherwise upholding statute as constitutional).

Similarly, an aspect of Plaintiff's and the class' *prima facie* case would have required establishing that Citizens used an "automatic telephone dialing system" ("autodialer" or "ATDS") to make the calls at issue. Dkt. 1, Compl. ¶ 19; 47 U.S.C. § 227(b)(1)(A)(iii). In *ACA Int'l v. FCC*, 885 F.3d 687, 695 (D.C. Cir. 2018), the D.C. Circuit overruled the FCC's consumer-friendly definition of an autodialer, and a Circuit split on this issue developed— largely while this case was pending.[5] The First Circuit has yet to rule on this issue, leaving it up in the air as to how this case would fair in the current climate.

However, just a few months ago, the Supreme Court granted *certiorari* to address the split in *Facebook, Inc. v. Duguid*, __ S.Ct. __, 2020 WL 3865252 (U.S. Jul. 9, 2020). Oral argument is set for November 2020, and the Justice Department filed an amicus brief urging the Court to adopt a narrow interpretation of the law. Judge Amy Coney Barrett of the Seventh

---

[5]    *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (imposing restrictive definition requiring random or sequential phone number generation capacity); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306 (11th Cir. 2020) (similar); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020) (similar); *but see Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (imposing significantly broader definition of an ATDS that includes equipment with the capacity to simply dial from a database or list of stored numbers); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) (similar); *Allan v. Pa. Higher Educ. Assistance Agency*, 2020 WL 4345341, at *9 (6th Cir. July 29, 2020) (similar).

Circuit, the President's nominee to replace Justice Ginsburg, wrote the opinion ruling against consumers on this issue in *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020). It would be an understatement to say that the class members have risk in the absence of settlement: if the Supreme Court were to adopt the view espoused by Judge Barrett in the Seventh Circuit, class members would receive nothing for their ATDS claims without this settlement.

This also highlights the risk to the class in proceeding absent settlement: Citizens disputed whether Plaintiff would be able to successfully certify a class on a litigation basis, contending that manageability concerns not present in the settlement context would preclude certification—for example, in Plaintiff's ability to overcome perceived individualized issues of class member ascertainability and consent for the calling at issue, including based on the way Citizens maintains its records. While Plaintiff believes in the strength of his and the class' claims, this argument presented a real risk that contested litigation could result in zero relief for the class.[6] And certainly, a drawn-out battle would ensue with a practically guaranteed Rule 23(f) interlocutory appeal, regardless of the ruling. In contrast, this Settlement ensures immediate, meaningful relief, which Class Members had the ability to obtain by merely filling out of simple, one-page Claim Form.

The risk of losing at summary judgment or trial, or being able to obtain a certified class, even after drawn-out, costly litigation, were material considerations. Indeed, even if he were ultimately successful in this regard, that doesn't guarantee any particular recovery to Plaintiff or

---

[6]    *But see Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 61 (C.D. Cal. 2017) ("Class certification cannot be defeated by Defendants' poor record-keeping or failure to establish performance data reporting mechanisms with their third-party vendors. This would incentivize companies to not keep records, or not require that their vendors keep records, in an attempt to circumvent TCPA liability."); *cf. Moser v. Health Ins. Innovations, Inc.*, 2019 WL 3719889, at *12 (S.D. Cal. Aug. 7, 2019); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019).

11

the class, especially since some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *E.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, 2011 WL 1706061, at \*4 (N.D. Ill. May 5, 2011) ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

In short, Plaintiff disputes every one of Citizens' defenses, but the risks, costs, and delay in continued adversarial litigation—particularly given the current status of the law and nature of his claims—support the Settlement, including in light of the substantial relief obtained. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at \*6 (D.R.I. Feb. 17, 2016) ("A settlement agreement is reasonable when it accounts for a realistic view of the particular risks and uncertainties involved in the litigation, especially … where the defendants' defenses … 'could result in no liability and zero recovery for the class.'").

> 2.  **The monetary terms of the Settlement fall favorably within the range of prior TCPA class action settlements, and the method of relief distribution of that relief is effective and equitable.**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at \*5 (D.R.I.

Feb. 17, 2016) (noting "'strong public policy in favor of settlements,' … particularly in class action litigation") (quoting *P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014)).

The Settlement provides Class Members with direct monetary relief that, at approximately $44 per claimant, falls in line with other approved TCPA class settlements. *E.g., Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving $24 per claimant in a TCPA class action); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *2 (N.D. Ill. Aug. 29, 2016) (granting final approval to TCPA class settlement where anticipated claimant recovery was $45); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 790 ($34.60); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 494 (N.D. Ill. 2015) (approximately $30); *Rose v. Bank of Am. Corp.*, No. 11-2390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving TCPA settlement with estimated claimant recovery of $20 to $40); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) ($33.20 each); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) ($13.75 each).

Further, many courts have deemed the TCPA's statutory damages too small to incentivize a significant number of individual actions, meaning Class Members can obtain this benefit despite the fact that, absent settlement, the vast majority of them would not otherwise obtain *any* redress for the alleged violations at issue. *See, e.g., Sadowski v. Med1 Online, LLC*, 2008 WL 2224892, at *5 (N.D. Ill. May 27, 2008) (finding, in TCPA case, that "[i]n consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages may be too insignificant to provide class members with incentive to pursue a claim individually"); *cf. St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012).

13

The Parties' Settlement, therefore, falls within a range of reasonableness—"'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Rivero Souss v. Banco Santander S.A.*, 2011 WL 13350165, at *7 (D.P.R. June 9, 2011) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005)). Indeed, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 326 (N.D. Ga. 1993).[7]

Further, not only is the relief afforded under the Settlement reasonable and adequate, but so is its method of distribution. *See* Fed. R. Civ. P. 23(e)(2)(c)(ii) (finding "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" a relevant factor as to approval of a settlement). The claims process was easy and effective: Class Members submitted a simple, one-page claim form with basic information—i.e., name, address, current and applicable phone number(s), and email address, if available—along with a signed certification that they received at least one nonconsensual call from or on behalf of Citizens to a phone number for which they were the user or subscriber. *See* Agr. ¶ 9.01, Exs. A, C-1.[8] KCC then reviewed (and, as to some, is still reviewing) the Claim Forms for

---

[7]     In determining whether a settlement is fair in light of the potential range of recovery, important is the maxim that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *See In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 97–98 (D. Mass. 2005) ("While it is possible to hypothesize about larger amounts that might have been recovered, ... '[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)).

[8]     Class Members were able to submit their claims by returning the prepaid, completed claim form that was included with the Mail Notice, by downloading a claim form from the settlement website and mailing it to the Settlement Administrator, or by submitting it online through the settlement website directly. Dkt. 43-1, Agr. ¶¶ 8.04, 9.02.

completeness, timeliness, and correctness, including by verifying them against the Class List. *Id.*

¶ 9.03. Checks—for each claimant's *pro rata* share of the Settlement Fund, less the cost of

notice/administration, Class Counsel's fees and expenses, and any incentive award—will go out

to qualified Class Members no later than 30 days after the Funding Date[9] and, to the extent

administratively feasible, KCC will continue to distribute amounts remaining in the Fund

thereafter (e.g., due to uncashed checks), before paying the remainder to a Court-appointed *cy*

*pres* recipient. Dkt. 43-1, Agr. ¶¶ 4.04, 7.04(d)-(e), 9.04.

Thus, this claims and payment process is simple, straightforward, and accessible, while

appropriately discouraging fraudulent claims by requiring a signed certification and verification

process. And it treats Class Members equitably relative to each other, too, because each Class

Member here had an equal opportunity to claim in for their *pro rata* share of the Settlement's

benefits. Dkt. 43-1, Agr. ¶ 4.04; *see* Fed. R. Civ. P. 23(e)(2)(D) (providing that whether "the

proposal treats class members equitably relative to each other" is a relevant factor for approval).

Indeed, the absence of objections further support the equitable nature of the Settlement amongst

the Class. As such, and in light of the material relief provided, approval should be granted.

### 3.    The proposed attorneys' fees are fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are

also factors in considering whether the relief provided to the Class in a proposed Settlement is

adequate. Fed. R. Civ. P. 23(e)(2)(C)(iii). Though discussed in greater detail in Plaintiff's

Motion for Attorneys' Fees, Expenses, and Incentive Award, Dkt. 45, Class Counsel's request

for fees in the amount of one-third of the Settlement Fund, or $612,500, plus costs, falls in line

---

[9]    The Funding Date—when Citizens is to pay the bulk of the Settlement—is seven
business days after the Effective Date, when the Judgment becomes final. Agr. ¶¶ 2.17, 2.22.

with other class settlements in the First Circuit and elsewhere, and is thus reasonable.[10] This is particularly the case given the contingent nature of Class Counsel's work on behalf of the Class, and the risks faced given the unique aspects of this action (including, for example, based on Citizens' arguments against class certification on a litigation basis given perceived individualized issues of consent and the nature of how its records were maintained), and the terrific result achieved through this non-reversionary settlement.

Under the Parties' Agreement, there is no "clear-sailing" provision, and Class Counsel will be paid any awarded fees on the same schedule as Class Members, i.e., thirty days after the Funding Date, which is seven business days after both the Judgment is final and no longer appealable. Dkt. 43-1, Agr. ¶¶ 2.17, 2.22, 5.02, 7.04. The Claims Deadline was September 30, 2020, Dkt. 44, Order ¶ 20, and the Court thus can make its decision as to final approval and fees with a sufficient expectation of how the fees will affect the amount each claimant's payout. Hence, this is not one of those settlements with a post-final approval claims deadline that leaves the amounts each claimant might receive entirely open-ended:[11] KCC knows the number of timely claims received, which permits the Parties to represent with reasonable certainty that, if the Court grants fees, costs, and the incentive award as requested, each approved claimant will

---

[10]     *E.g., Gordan v. Mass. Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) (finding one-third fee request "fair and reasonable"); *In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 4038942, at *7 (D.R.I. July 17, 2020) (finding one-third fee request "reasonable and appropriate"); *Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (fees of one-third of fund in TCPA case); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (same); *Schwyhart v. AmSher Collection Servs., Inc.*, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (finding one-third in fees in TCPA settlement "fair and reasonable").

[11]     *See* Fed. R. Civ. P. 23 Notes ("Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members…. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").

receive approximately $44.[12] The reasonableness and timing of Class Counsel's requested fees thus further support approval.[13]

### D.    Notice Was Consistent with Due Process and Rule 23.

"The notice program need not be perfect, but it must provide the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Medoff*, 2016 WL 632238, at *7 (quoting Fed. R. Civ. P. 23(c)(2)(B)); *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) ("Individual notice … is not meant to guarantee that every member entitled to individual notice receives such notice, but it is the court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class members.").

Here, direct notice, whether through the mail or email (or both), was successfully delivered to 95.4% of all persons on the Class List, further bolstered through a Facebook ad campaign, a dedicated, interactive settlement website, and a toll-free number. Ex. A, KCC Decl. ¶¶ 8-12. The notice program thus far exceeds the minimum due process requirements. The effectiveness of the notice program is evident by the 7.19% claims rate meeting or exceeding

---

[12]    [$1,837,500 fund - $300,000 estimated admin. - $612,500 fees - $15,044.84 costs - $15,000 incentive award] ÷ [20,178 claims] = approximately $44.35. If the Court utilizes its discretion to include the 178 untimely claims, this goes down to $43.96.

[13]    As explained more fully in their fee petition, Dkt. 45, Class Counsel also seek reimbursement for their case-related expenses, which totaled $15,044.84. Such reimbursements are routinely granted from a common fund settlement, especially where, as in this case, it is supported by counsel's declarations and limited to truly case-relevant expenses such as mediation costs, case-related travel costs, and case initiation and service charges and fees. *See* Dkt. 45-1, Burke Decl. ¶ 16; *see, e.g., In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("[L]aw firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax.").

typical parameters for consumer class actions such as this[14]—in addition to the fact that not a single Class Member objected. As such, notice satisfied due process, and the Settlement should be approved.

## II.    Certification of the Settlement Class Is Appropriate.

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). Dkt. 44 ¶ 4. The Court directed notice of the proposed Settlement, thereby informing Class Members of the existence and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and place of the fairness hearing. *Id.* ¶¶ 7-16; *see* Manual for Complex Litig., at §§ 21.632, 21.633. Nothing has occurred since preliminary approval that should alter this Court's conclusions. As such, the Settlement Class should be certified under Fed. R. Civ. P. 23.

### A.    The Rule 23(a) requirements are satisfied.

The numerosity requirement of Fed. R. Civ. P. 23(a)(1) is satisfied because the Settlement Class of persons whose cellular telephone numbers Citizens called using its Avaya, Noble, or Nuance dialing systems during the Class Period is limited to the Class List of 283,264 unique numbers confirmed through confirmatory discovery. Ex. A, KCC Decl. ¶ 3; Dkt. 43-1, Agr. ¶¶ 2.11, 2.28; *see In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 397 (D.R.I. 2019) ("Generally, 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'") (citation omitted).

Whether "there are questions of law or fact common to the class" under Fed. R. Civ. P. 23(a)(2) is satisfied because the most important questions are common to the Settlement Class:

---

[14]    *E.g., McCrary v. Elations Co.*, 2015 WL 12746707, at *9 (C.D. Cal. Aug. 31, 2015) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent.") (citation omitted).

whether Citizens' dialers constitute ATDS under the TCPA, whether Defendant had consent, and whether Defendants' violations were willful. *See Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003) ("It 'does not require that class members' claims be identical.' ... A single common legal or factual issue can suffice.... [C]ommonality … ordinarily is easily met."); *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 701 (S.D. Fla. 2018) (finding commonality met along similar lines in certifying TCPA class action).

Plaintiff's claims are typical of other class members' claims pursuant to Fed. R. Civ. P. 23(a)(3)'s because plaintiff and each class member's claims were brought under the same paragraph of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), for calls using similar dialing technology and prerecorded messages. All claims thus arise out of "the same event or practice or course of conduct that gives rise to the claims of other class members," and are "based on the same legal theory." *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008).

Finally, the adequacy requirement of Fed. R. Civ. P. 23(a)(4) is satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class, and has been committed to prosecuting this action on behalf of the class. Ex. B, Burke Decl. ¶ 15; *see Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) ("[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. 'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.'") (citation omitted). Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA actions. *See* Ex. B, Burke Decl. ¶¶ 2-11.

19

B.    **The Rule 23(b)(3) requirements are satisfied.**

The predominance requirement of Rule 23(b)(3) is satisfied because the most important issues in the case can be decided in one fell swoop. claims of the Class Members all arise from the same type of autodialed calling by Citizens—thereby ensuring a predominance of common questions concerning whether equipment that similar has the capacity to dial from stored lists constitutes an ATDS under the TCPA, whether consent existed for such call recipients, and whether Citizens' violations were willful—all of which Plaintiff asserts can be determined on a class-wide basis through generalized evidence.[15] *See Sadowski v. Med1 Online, LLC*, 2008 WL 2224892, at *4-5 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant elected who was to receive the [ ] faxes" in TCPA junk fax case); *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met."). Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Moreover, resolution of tens of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small

---

[15]    Defendant disagrees that a non-settlement class can be certified in this action, but submits to certification of the Class here for purposes of settlement, only. Dkt. 43-1, Agr. ¶ 1.03.

potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit).  For these reasons, certification of the Class for settlement purposes is appropriate.

**III.    The Court Should Grant the Class Representative's Requested Incentive Award.**

As detailed more fully in Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award, Dkt. 45, Plaintiff also seeks an incentive award in the amount of $15,000 for his service on behalf of the class in this action. "In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allamerica Fin. Corp.*, 1999 WL 342042, at *3 (D. Mass. May 19, 1999) (citing *Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990)).

Without Plaintiff Kondash's participation, the class would not receive anything at all. His involvement in assisting Class Counsel's pre-suit investigation, participating in discovery, and engaging in the settlement process, were crucial to the successful resolution of this action, and warrant an award both to compensate him for his efforts and to encourage others to do the same in future actions. *Cabot*, 2018 WL 5905415, at *11; *see* Ex. B, Burke Decl. ¶ 15. As such, Plaintiff respectfully submits that his request for a $15,000 incentive award is in line with awards awarded in similar actions, is reasonable, and should be granted. *See, e.g., Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) (noting that "[i]ncentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall[,]" and that, at least in wage-and-hour cases, "awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher"); *Charvat v. Valente*, 2019 WL

21

5576932, at *13 (N.D. Ill. Oct. 28, 2019) ($25,000 incentive award in TCPA class action

settlement); *Cooper v. Nelnet, Inc.*, 2015 WL 12839778, at *2 (M.D. Fla. Aug. 4, 2015) (same);

*Prater v. Medicredit, Inc.*, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) ($20,000 incentive

award in TCPA class action settlement).

## **CONCLUSION**

Plaintiff respectfully submits that the Settlement in this matter is an excellent result for

the Class, and the exceptional response from Class Members suggests that they agree.  For this

and the foregoing reasons, Plaintiff respectfully requests that the Court approve the Settlement

and enter a Final Approval Order and Judgment, in the form attached hereto as Exhibit C.

Respectfully submitted,

DARREN KONDASH, individually and
on behalf of others similarly situated

Dated: October 26, 2020            By:  */s/ Christopher M. Lefebvre*
Christopher M. Lefebvre (#4019)
CONSUMER & FAMILY LAW CENTER OF
CLAUDE F. LEFEBVRE & CHRISTOPHER M.
LEFEBVRE, P.C.
Two Dexter Street
Pawtucket, RI 02860
Telephone: (401) 728-6060
chris@lefebvrelaw.com

Alexander H. Burke (*pro hac vice*)
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com

*Counsel for Plaintiff*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 26, 2020, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<em>/s/ Alexander H. Burke</em>