# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

DARREN KONDASH, individually and on
behalf of others similarly situated,

         Plaintiff,

    v.

CITIZENS BANK, NATIONAL
ASSOCIATION,

         Defendant.

Case No. 1:18-cv-00288

Hon. Judge William E. Smith
Hon. Mag. Judge Lincoln D. Almond

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF
## <u>MOTION FOR ATTORNEYS' FEES AND EXPENSES</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.  BACKGROUND ..........................................................................................2

II.  THE PROPOSED FEE, COST, AND SERVICE AWARDS ARE REASONABLE.........4

  A.  The Fee Amount Is Reasonable as a Percentage of the Settlement Fund. ...............4

  1.  All relevant factors support the fee on a percentage-of-the-fund basis. ......6

  i.  Size of Fund and Number of Persons Benefitted............................6

  ii.  Skill, Experience, and Efficiency of Class Counsel .......................6

  iii.  Complexity and Duration of the Litigation.....................................7

  iv.  Risks of the Litigation....................................................................8

  v.  Time Devoted to the Case...............................................................9

  vi.  Awards in Similar Cases...............................................................10

  vii.  Public Policy Considerations .......................................................11

  B.  A lodestar cross-check further supports the requested fee....................................11

  C.  The Court should award Class Counsel their case-related expenses. ...................15

III.  CONCLUSION...........................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*ACA Int'l v. FCC,*
   885 F.3d 687 (D.C. Cir. 2018) ................................................................. 2

*Allan v. Pa. Higher Educ. Assistance Agency,*
   968 F.3d 567 (6th Cir. 2020) ................................................................. 8

*Anthem Ins. Cos.,*
   2015 WL 3645208 (E.D. Mo. June 10, 2015) ......................................... 10

*Barnes v. Aryzta, LLC,*
   2019 WL 277716 (N.D. Ill. Jan. 22, 2019) ............................................. 13

*Barr v. Am. Ass'n of Political Consultants, Inc,*
   140 S. Ct. 2335 (2020) ........................................................................... 9

*Beckman v. KeyBank N.A.,*
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................. 15

*Bennett v. Roark Capital Grp., Inc.,*
   2011 WL 1703447 (D. Me. May 4, 2011) ............................................... 10

*Birchmeier v. Caribbean Cruise Line, Inc.,*
   896 F.3d 792 (7th Cir. 2018) ................................................................. 10

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ............................................................................... 4

*Conley v. Sears, Roebuck & Co.,*
   222 B.R. 181 (D. Mass. 1998) ............................................................... 14

*Davis v. J.P. Morgan Chase & Co.,*
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................... 15

*Dominguez v. Yahoo, Inc.,*
   894 F.3d 116 (3d Cir. 2018) ................................................................. 8

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020)............................................................................................. 8

*Elkins v. Medco Health Solutions, Inc.*,
  2014 WL 1663406 (E.D. Mo. Apr. 25, 2014)................................................................. 8

*Facebook, Inc. v. Duguid*,
  __ S.Ct. __, 2020 WL 3865252 (U.S. Jul. 9, 2020)................................................... 1, 8

*Facebook, Inc. v. Duguid*,
  2020 WL 3865252 (S. Ct. July 9, 2020)........................................................................ 15

*Fitzhenry v. ADT*,
  2014 WL 6663379 (S.D. Fla. Nov. 3, 2014).................................................................. 8

*Gadelhak v. AT&T Servs., Inc.*,
  950 F.3d 458 (7th Cir. 2020) ...................................................................................... 1, 8

*Glasser v. Hilton Grand Vacations Co.*,
  948 F.3d 1301 (11th Cir. 2020) .................................................................................... 8

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
  2019 WL 2249941 (S.D. Fla. May 24, 2019).............................................................. 10

*Gordan v. Massachusetts Mut. Life Ins. Co.*,
  2016 WL 11272044 (D. Mass. Nov. 3, 2016) ........................................................ 1, 14

*Greene v. DirecTV, Inc.*,
  2010 WL 4628734 (N.D. Ill. 2010) .............................................................................. 8

*Gross v. Sun Life Assurance Co. of Canada*,
  880 F.3d 1 (1st Cir. 2018)............................................................................................ 12

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
  2015 WL 13650934 (S.D. Fla. June 24, 2015) ........................................................... 10

*Hanley v. Tampa Bay Sports & Entm't LLC*,
  2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)............................................................ 10

*Hill v. State St. Corp.*,
  2015 WL 127728 (D. Mass. Jan. 8, 2015).................................................................. 14

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................ 6, 7, 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003) ............................................................................. 11

*In re Fid./Micron Sec. Litig.*,
  167 F.3d 735 (1st Cir. 1999) ................................................................................. 16

*In re Fleet/Norstar Sec. Litig.*,
  935 F. Supp. 99 (D.R.I. 1996) ................................................................................ 5

*In re Loestrin 24 Fe Antitrust Litig.*,
  2020 WL 4038942 (D.R.I. July 17, 2020) ...................................................... 5, 6, 11

*In re Lupron Mktg. & Sales Practices Litig.*,
  2005 WL 2006833 (D. Mass. Aug. 17, 2005) ........................................................ 6

*In re Neurontin Mktg. & Sales Practices Litig.*,
  58 F. Supp. 3d 167 (D. Mass. 2014) ..................................................................... 14

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) ............................................................................. 14

*In re Rite Aid Corp. Sec. Litig.*,
  146 F.Supp.2d 706 (E.D. Pa. 2001) ...................................................................... 14

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995) ............................................................................... 5, 11

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................ 4

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ..................................................................... 12

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................. 14

*Kasalo v. Trident Asset Mgmt., LLC*,
  2015 WL 2097605 (N.D. Ill. May 3, 2015) .......................................................... 13

- iv -

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ............................................................................. 5, 6

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................ 14

*Markos v. Wells Fargo Bank, N.A.*,
    2017 WL 416425 (N.D. Ga. Jan. 30, 2017) .................................................................. 6

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018) .................................................................................. 8

*Melikhov v. Drab*,
    2018 WL 3190824 (N.D. Ill. May 21, 2018) ............................................................... 13

*Mooney v. Domino's Pizza, Inc.*,
    2018 WL 10232918 (D. Mass. Jan. 23, 2018) ............................................................. 14

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
    2009 WL 2408560 (D. Mass. Aug. 3, 2009) ................................................................ 14

*Reid v. Unilever United States, Inc.*,
    2015 WL 3653318 (N.D. Ill. June 10, 2015) .............................................................. 13

*Roberts v. TJX Companies, Inc.*,
    2016 WL 8677312 (D. Mass. Sept. 30, 2016) ............................................................. 11

*Schwyhart v. AmSher Collection Servs., Inc.*,
    2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ............................................................. 10

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .............................................................. 15

*Sylvester v. CIGNA Corp.*,
    401 F. Supp. 2d 147 (D. Me. 2005) .......................................................................... 11

*Tomeo v. CitiGroup, Inc.*,
    2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) .............................................................. 9

*United States v. One Star Class Sloop Sailboat*,
    546 F.3d 26 (1st Cir. 2008) ................................................................................. 12, 13

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................ 14

*Wilkins v. HSBC Bank Nev., N.A.*,
  2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ............................................. 7

*Wreyford v. Citizens for Transportation Mobility, Inc.*,
  2014 WL 11860700 (N.D. Ga. Oct. 16, 2014) ........................................ 10

*Wright v. Nationstar Mortgage LLC*,
  2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .......................................... 6

## **<u>Statutes</u>**

47 U.S.C. § 227 ............................................................................................. 2

47 U.S.C. § 227(b)(1)(A)(iii) ........................................................................ 9

Pursuant to Judge Smith's November 9, 2020 order, Plaintiff respectfully submits this supplemental brief to further support Class Counsel's request for a fee award of $612,500 and reimbursement of $13,544.84 in expenses.

The requested amounts are exactly what the notices sent to the class members described: "Plaintiff will ask the Court to award fees of up to one-third of the Settlement Fund, or $612,500, plus costs not expected to total more than $20,000…." Dkt. 47-1 at 9, 11, 22. Additionally, if the Court were to approve these amounts, the per-claimant recovery, approximately $44 each, is in line with Class Member expectations given that the notices estimated payouts of between $25 and $60. Dkt. 47 at 9, 11, 18, 20. There have been no objections to the Settlement at all, let alone as to attorney's fees.

Of course, the reaction of the Class is not the Court's only consideration. As explained below, the requested fee is also within the realm of what is approvable when considered under the percentage-of-the-fund method, 33⅓%, and the reasonableness of the fee is confirmed through a lodestar crosscheck: a multiplier of less than three. *Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (awarding one-third attorneys' fees, finding lodestar multiplier of 3.66 "eminently reasonable and ... within a range approved by, numerous other courts").

It bears mentioning, too, that this is a fantastic settlement when one considers the recent legal landscape: Most of the claims raised in this case are likely to disappear in around May 2020, depending on the Supreme Court's forthcoming ruling on what constitutes an "automatic telephone dialing system" under the Telephone Consumer Protection Act, in *Facebook, Inc. v. Duguid*, __ S.Ct. __, 2020 WL 3865252 (Jul. 9, 2020). Indeed, given the current makeup of the Supreme Court, and that Justice Barrett penned *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458,

462 (7th Cir. 2020), it seems there is little hope for those claims in the future. And while *Gadelhak* and *certiorari* in *Facebook* happened after this settlement was executed and Class Counsel does not purport to have been clairvoyant, the undersigned was generally aware of these risks when negotiating this fantastic settlement.[1]

Consequently, and as set forth herein and in his original motion, Dkt. 45, Plaintiff respectfully asks that the Court award the amounts requested.

## I.   <u>BACKGROUND</u>

Plaintiff Darren Kondash filed this action on June 1, 2018, seeking redress against Defendant Citizens Bank, N.A. ("Citizens") on behalf of himself and others for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Relevant here, the TCPA prohibits making any non-emergency call using an automatic telephone dialing system ("autodialer" or "ATDS") or an artificial or prerecorded voice to a cell phone number without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii).

Discovery was thorough and extensive: In addition to third-party discovery, Class Counsel obtained and reviewed class-related data and nearly 9,000 pages of materials produced by Citizens in response to written discovery requests, and took Citizens' Rule 30(b)(6) deposition. <u>Exhibit A</u>, Burke Decl. ¶ 15. Class Counsel also ensured that they obtained the materials needed to successfully prosecute the case by filing a motion to compel information and documents concerning calls to putative class members, which resulted in further supplementation after Citizens acknowledged that certain information it provided was incorrect. *See* Dkt. 25, 31.

---

[1]      The issue of what constitutes an "automatic telephone dialing system" has been the subject of vastly different judicial interpretations across District and Circuit Courts, and subject to FCC requests for public comment and potential ruling, ever since the D.C. Circuit rejected the FCC's past interpretation in *ACA Int'l v. FCC*, 885 F.3d 687, 695 (D.C. Cir. 2018)—two months before Plaintiff filed this lawsuit.

In February 20, 2020, the Parties participated in mediation with the Hon. Morton Denlow (Ret.), a well-known mediator experienced in resolving TCPA class actions. Dkt. 43-1, Agr. ¶ 1.02. In advance of this mediation, Class Counsel insisted that Citizens produce information and records relevant to the size and nature of the class, and the parties exchanged detailed mediation briefing. Exhibit A, Burke Decl. ¶ 17. A general term sheet was agreed to at the mediation, and the parties continued to negotiate the specific terms of the Settlement for several weeks thereafter, with Plaintiff moving for preliminary approval on April 13, 2020. *Id.*; Dkt. 43.

The Settlement calls for Defendant to create a non-reversionary cash Settlement Fund of $1,837,500, *see* Dkt. 43-1, Agr. ¶ 4.02, to compensate the following Settlement Class:

> All subscribers and regular users of cellular telephone numbers that Citizens Bank, N.A. called through Citizens' Avaya, Noble, or Nuance dialing systems during the Class Period, limited to the Class List of approximately 283,264 unique cellular telephone numbers identified through Defendant's records. [Dkt. 44 ¶ 4.]

Notice was sent via direct mail (and, where available, email) to Class Members on the Class List after a reverse-lookup process, which was further supplemented with a settlement website, online publication notice, and a toll-free hotline, administered by well-regarded administrator KCC. *See* Dkt. 43-1, Agr. ¶¶ 2.09, 8.02-8.05. Class Members were each entitled to submit a claim for a *pro rata* share of the Settlement Fund, less notice/administration costs and any award to Class Counsel or the Class Representative. *Id.* ¶¶ 2.07, 9.02; Dkt. 44 at 8.[2][3]

The Class overwhelmingly supported the Settlement: No one objected, there was only

---

[2]    Money remaining after the initial distribution to valid claimants will be redistributed *pro rata* to those claimants who cashed their initial checks, to the extent administratively feasible, and ultimately to a Court-approved *cy pres* recipient. *Id.* ¶ 7.04(e).

[3]    In exchange, Class Members are releasing claims tailored to the acts that gave rise to this case, i.e., "TCPA and related state analogue claims arising out of Citizens making calls through its Avaya, Noble, or Nuance dialing systems." Dkt. 43-1, Agr. ¶¶ 2.26, 13.01. "Claims arising from other means of communication are excluded; for example, text messages[,] … LiveVox calls, and fraud alert calls and texts." Dkt. 43-1, Agr. ¶ 2.26.

one opt-out, and Class Members submitted over 20,000 claims for payment, which is expected to afford each valid claimant at least $44 in direct monetary recovery. Dkt. 47-1 ¶¶ 13-14, Dkt. 48.

Class Counsel filed Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award on July 31, 2020, Dkt. 45, and moved for final approval of the Settlement on October 26, 2020, Dkt. 47.

Judge Smith held the fairness hearing on November 9, 2020, during which Class Counsel stated that he "estimated" the lodestar at $110,000, based upon a quick review of what turned out to be the wrong records a few moments before the hearing. This was a mistake. While Class Counsel at the time believed that the estimate was correct, he should not have provided any number at all without having done a thorough review of the firm's records, and regrets having done so. Indeed, in retrospect, the undersigned realizes that $110,000 in lodestar for a hard-fought, two-year old class case doesn't even make sense. To make things worse, the off-the-cuff, erroneous estimate seems to have delayed payment to the Class and has caused the Court to have to do extra work. Upon further, more careful, review of the firm's records, the combined lodestar comes to $226,785. Ex. A, Decl. ¶¶ 18-20. The undersigned apologizes for causing this situation.

## II.  THE PROPOSED FEE, COST, AND SERVICE AWARDS ARE REASONABLE.

Plaintiff discussed in detail the basis for Class Counsel's fee request in his Motion for Attorneys' Fees, Expenses, and Incentive Award, Dkt. 45, and thus generally reviews those arguments herein, should the Court find it helpful.

### A.  The Fee Amount Is Reasonable as a Percentage of the Settlement Fund.

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007). In such common-fund cases, attorneys' fees are

generally calculated through one of two methods: (1) percentage-of-the fund ("POF"), where "the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation," or (2) lodestar, i.e., "the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). The district court has discretion as to what methodology to use. *Id.* at *308.

A percentage-of-the-fund approach should be utilized in this case. "While the First Circuit has not mandated use of the percentage-of-fund method, it has held that the approach 'offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace.'" *In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 4038942, at *6 (D.R.I. July 17, 2020) (quoting *In re Thirteen Appeals*, 56 F.3d at 307). Indeed, the percentage-of-the-fund method in common fund cases is "the prevailing praxis" in this Circuit. *In re Thirteen Appeals*, 56 F.3d at 307 (noting it offers "distinct advantages").

Percentage-of-the-fund is also particularly appropriate here, because the TCPA is not fee-shifting. *See In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996) (noting retreat from use of lodestar method in non-fee-shifting cases, and citing Third Circuit Report finding that POF approach "was the preferred method of calculating attorney fees in common-fund cases"); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (finding, in TCPA class case, that "the normal practice in consumer class actions is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery"). Consequently, the percentage-of-the-fund method for determining attorneys' fees makes the most sense in this non-reversionary, common-fund case, and Plaintiff respectfully requests its use here.

5

**1.  All relevant factors support the fee on a percentage-of-the-fund basis.**

For guidance in establishing the reasonableness of a percentage-based fee award, courts in this Circuit have looked to the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

*In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 4038942, at *6 (citing *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005)).

Because these factors have already been addressed in Plaintiff's fee petition, Dkt. 45, Plaintiff respectfully provides only a general overview of such herein.

### i.  Size of Fund and Number of Persons Benefitted

Class Counsel's efforts yielded a $1,837,500, non-reversionary Settlement Fund for the benefit of Class Members associated with 283,264 unique cell numbers. Dkt. 43-1, Agr. ¶¶ 2.28, 4.02. The Class' response has been overwhelmingly positive. Not one class member objected, only one Class Member opted out, and over 20,000 Class Members submitted claims—resulting in a 7.23% claims rate that exceeds what is typical in consumer class settlements. Dkt. 47-1 ¶¶ 13-14; Dkt. 48 ¶ 2. Valid claimants are expected to receive around $44, which falls in line with similar TCPA class settlements,[4] thereby supporting the reasonableness of the fee request.

### ii.  Skill, Experience, and Efficiency of Class Counsel

Class Counsel's skill, experience, and efficiency support the fee request. Burke Law

---

[4]     *E.g., Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving $24 per claimant in a TCPA class action); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *2 (N.D. Ill. Aug. 29, 2016) (granting final approval to TCPA class settlement where anticipated claimant recovery was $45); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) ($34.60); *Kolinek*, 311 F.R.D. at 493 (approximately $30).

Offices, LLC's practice focuses almost exclusively on TCPA litigation, and its owner, Alexander H. Burke, is regularly asked to speak on the topics of TCPA and class litigation on the national stage, participates in policymaking as to the statute, and has helped in obtaining hundreds of millions of dollars for consumers' benefit. Exhibit A, Burke Decl. ¶¶ 3-6. He has served in leadership positions and as class counsel in some of the largest TCPA class action cases – and settlements – in history. *E.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ($75.5 million); *Wilkins v. HSBC Bank Nev., N.A.*, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($40 million).

Class Counsel's skill and efficiency in this matter likewise allowed them to negotiate the Settlement while avoiding drawn-out motion practice that would have been a drain on the Court's and the parties' resources, instead effectively pressing the class discovery issues in a fashion that ultimately brought Citizens to the mediation table without requiring a ruling on Plaintiff's motion to compel discovery. *See* Dkt. 25, 32, 35. They demanded the material information relevant to the nature and scope of the Class in advance of mediation, ensuring informed negotiations, and required that confirmatory discovery take place to further protect the Class' interests. Dkt. 43-1, Agr. ¶ 4.05. Class Counsel's exceptional skill, experience, and efficiency thus support approval of their fee request.

### iii.    Complexity and Duration of the Litigation

This is a complex litigation that has been pending for over two years. Dkt. 1. Because of the nature of Plaintiff's claims under the TCPA, data relevant to the class was of central importance, including in relation to identifying violations and ascertaining class members. Exhibit A, Burke Decl. ¶ 16. This proved particularly difficult here, given the way in which Citizens memorializes calls and consumer consent, and Defendant's anticipated adversarial

arguments against class certification and the merits resulting from, for example, perceived difficulties in establishing ascertainability and predominance on a non-settlement basis, or proving whether a prerecorded message was made during a particular call. *Id.* This matter was further complicated by the upheaval to relevant law under the TCPA during its pendency, including the potentially case-ending circuit split that developed after the D.C. Circuit struck down the FCC's interpretation of what constitutes an "automatic telephone dialing system" under the statute two months before filing,[5] an issue now up before the Supreme Court in *Facebook, Inc. v. Duguid*, __ S.Ct. __, 2020 WL 3865252 (U.S. Jul. 9, 2020). The complexity and duration of this data-intensive class action thus further support the fee request.

### iv.    *Risks of the Litigation*

Aside from the risks associated with *Duguid* and a likely change in law, as plaintiffs' lawyers who work on a contingent-fee basis, Class Counsel were acutely aware here of the risk that they might ultimately receive no compensation for their efforts—as happened to them in, for example, *Greene v. DirecTV, Inc.*, 2010 WL 4628734 (N.D. Ill. 2010), *Elkins v. Medco Health Solutions, Inc.*, 2014 WL 1663406 (E.D. Mo. Apr. 25, 2014), and *Fitzhenry v. ADT*, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014), each hard-fought cases to which Class Counsel devoted substantial time and money but lost despite best efforts. Exhibit A, Burke Decl. ¶ 12. Such losses hit hard, given their small size and necessarily finite resources. *Id.*

This case posed its own unique challenges. "Prior express consent" is a complete defense

---

[5]      *Contrast Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (extremely restrictive interpretation of an ATDS that requires random or sequential-dialing technology the industry doesn't use anymore); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020) (same); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306 (11th Cir. 2020) (same), *with Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (broad interpretation of an ATDS that encompasses equipment that can store numbers and dial them automatically); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) (same); *Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567, 579-80 (6th Cir. 2020) (same).

to TCPA liability, 47 U.S.C. § 227(b)(1)(A)(iii), and the way in which Citizens memorializes calls and consent in its data made figuring out who received calls after a do-not-call request on a litigation track extraordinarily difficult or impossible, absent settlement—which would have in all likelihood precluded class certification for want of ascertainability and predominance on an adversarial basis (which the parties were able to resolve on a settlement basis). *E.g., Luster v. Green Tree Servicing, LLC*, No. 14-1763 (N.D. Ga. Sept. 5, 2018) (accepting defense assertions in one of Class Counsel's cases that it obtains consent in a variety of manners in finding lack of predominance, despite fact that defendant admittedly neglected to track such in its records); *Tomeo v. CitiGroup, Inc.*, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after Class Counsel spent nearly five years in hard-fought litigation).

Not only that, but the law governing the TCPA has been in a state of extreme flux during the pendency of this action. The constitutionality of the TCPA itself was up before the Supreme Court during these proceedings, which was only just upheld in consumers' favor a few months ago in *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335 (2020). And, again, Plaintiff faced uncertainty regarding whether his autodialer claims had validity at all, given the circuit split that developed beginning in 2018 over the definition of an autodialer and which is now up before the Supreme Court, *see* supra n. 4.

Given the uncertainty surrounding this area of the TCPA, the unique nature of Citizens' class-related data, and the risk that Plaintiff could have lost at class certification, summary judgment, or trial, this case surely presented both novel and difficult issues and real risk of non-recovery, all of which supports the fee request.

v.    ***Time Devoted to the Case***

As further detailed in Section II.B, infra, Class Counsel expended 424.35 hours litigating

this action over the past two-plus years, not including drafting this brief or other work on their fee. Exhibit A, Burke Decl. ¶¶ 19-20. This has involved investigating Plaintiff's and the class' claims pre-suit to prepare the Complaint, appearing in Court (Dkt. 15), opposing an overreaching protective order and coordinating with defense counsel to submit an agreed proposal (Dkt. 21, 22), conducting first- and third-party discovery (including issuing and responding to written discovery and taking Citizens' Rule 30(b)(6) deposition), moving to compel discovery (Dkt. 25), reviewing Citizens' class-related data and nearly 9,000 pages of additional materials produced in this action, crunching and analyzing sample class data provided by Citizens in anticipation of mediation, drafting mediation position papers, negotiating the Settlement, and preparing associated filings. Exhibit A, Burke Decl. ¶¶ 15, 17.

This work was done on a contingent-fee basis by two small law firms that devoted their office's limited resources to this action for the benefit of the Class in this case in lieu of other matters. The time and resources devoted to this action thus support the fee request.

### vi.     Awards in Similar Cases

The one-third fee requested here is in line with numerous other TCPA[6] and non-TCPA[7]

---

[6]     *E.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming fee award in TCPA class settlement for "36% of the first $10 million"); *Hanley v. Tampa Bay Sports & Entm't LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (finding, in TCPA class case, that courts "routinely approve fee awards of one-third of the common settlement fund"); *Schwyhart v. AmSher Collection Servs., Inc.*, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (same); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 807 (N.D. Ill. Feb. 15, 2015) (awarding 36% of the total common fund for fees for the first $10,000,000); *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (awarding one-third fees plus costs); *Wreyford v. Citizens for Transportation Mobility, Inc.*, 2014 WL 11860700, at *2 (N.D. Ga. Oct. 16, 2014) (awarding 33 1/3% fees plus costs); *Guarisma v. ADCAHB Med. Coverages, Inc.*, 2015 WL 13650934, at *4 (S.D. Fla. June 24, 2015) (approving one-third fee award plus costs); *Lees v. Anthem Ins. Cos.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (34% fee award in TCPA class action).

[7]     *E.g., Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) ("one-third of the common fund reflects a fee that is customary"); *Gordan v. Mass. Mut. Life Ins.*

class settlements, and should, respectfully, similarly be awarded here.

### vii.     Public Policy Considerations

Public policy also supports the fee award. Without adequate compensation, plaintiffs' attorneys will have little incentive to undertake otherwise worthy class actions, particularly given their contingent-fee nature and the fact that they can often drag on for years at high cost but without any guarantee of eventual compensation. This need is all the more pressing with respect to low-value consumer claims, such as under the TCPA, which doesn't provide for statutory fee shifting and has base statutory damages that barely cover the cost of *filing* suit in federal court. *See* 47 U.S.C. § 227(b)(3). The public policy considerations inherent in the need to ensure that experienced counsel continue to litigate these claims thus further supports the fee request.

### B.     A lodestar cross-check further supports the requested fee.

A major factor in favor of the percentage-of-the-fund approach is that it "is result-oriented rather than process-oriented, [and thus] better approximates the workings of the marketplace." *In re Thirteen Appeals*, 56 F.3d at 307. By contrast, the lodestar method can have the deleterious effect of discouraging (or even punishing) efficiency, since "attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement." *Id.*

Nonetheless, "the lodestar approach … can be a check or validation of the appropriateness of the percentage of funds fee, but is not required." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215-16 (D. Me. 2003) (citing *In re*

---

*Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) (finding one-third fee request "fair and reasonable"); *In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 4038942, at *7 (finding one-third fee request "reasonable and appropriate"); *Sylvester v. CIGNA Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005) (awarding class counsel attorney's fees of 33 1/3% of recovery); *Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (same).

*Thirteen Appeals*, 56 F.3d at 307).[8] "When the lodestar is used in this way, the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007) (citing *In re Thirteen Appeals*, 56 F.3d at 307).

Class Counsel's lodestar in this action is $226,785—amounting to a 2.7 multiplier to the requested $612,500 fee—broken down as follows:

| Attorney | Years in Practice | Rate | Hours Worked | Lodestar |
|---|---|---|---|---|
| Alexander H. Burke (partner) | 17 | $600 | 298.6 | $179,160 |
| Daniel J. Marovitch (associate) | 10 | $375 | 107 | $40,125 |
| Christopher M. Lefebvre (partner) | 32 | $400 | 18.75 | $7,500 |

Exhibit A, Burke Decl. ¶¶ 19-20. The rates charged by the attorneys correlate to their respective experience and are in line with typical rates of attorneys with similar backgrounds and experience practicing in their respective legal markets. *See United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 40 (1st Cir. 2008) ("In determining the multiplier for a lodestar award— the applicable hourly rate—an inquiring court should look to 'the prevailing market rates in the relevant community.' ... When a party recruits counsel from outside the vicinage of the forum court, that court may deem the 'relevant community' to be the community in which the lawyer maintains his or her principal office.") (citations omitted);[9] *see* Exhibit A, Burke Decl. ¶¶ 19-

---

[8]     *But see Third Circuit Task Force Report*, 208 F.R.D. at 422 (expressing "high[] skeptic[ism] about the use of the lodestar even as a cross-check when awarding a percentage of the common fund," though noting "[t]he inherent flaws of the lodestar method are diminished, but certainly not eliminated, by making the lodestar a relevant rather than dispositive factor").

[9]     *See also Gross v. Sun Life Assurance Co. of Canada*, 880 F.3d 1, 24 (1st Cir. 2018) (noting court's discretion and upholding finding that counsel was "more appropriately compensated based on the prevailing rate where he maintains his office").

20.[10] Indeed, counsel's rates pale in comparison to the prevailing rates of their adversaries on the defense bar. *See Melikhov v. Drab*, 2018 WL 3190824, at *3 (N.D. Ill. May 21, 2018) (noting approved rates at similar amounts here are less than, for example, the $898-$926/hour partners typically charge at large national firms).

Further, Class Counsel's rates are those which they typically charge their clients, and which they have raised without reproach from other courts in similar lawsuits. *See* <u>Exhibit A</u>, Burke Decl. ¶¶ 13, 19-20; *One Star Class Sloop Sailboat*, 546 F.3d at 40 ("[T]he court may look to the outside lawyer's actual billing practices to determine the relevant rate."). This point is particularly relevant to the attorneys of Burke Law Offices, LLC, whose niche practice focuses almost exclusively on TCPA class litigation, bringing in particularized skill and experience into this case.

Class Counsel's lodestar and multiplier thus present a reasonable cross-check, particularly given the obstacles to prevailing on Plaintiff's TCPA claim, where recovery was far from guaranteed. This case was particularly risky given the broad uncertainty concerning what constitutes an "automatic telephone dialing system" in light of the current circuit split and pending Supreme Court ruling (and lack of much case law in this Circuit on the issue at all), as well as given the unique nature of Citizens' system and data providing it with predominance

---

[10]     There is no statutory fee shifting under the TCPA, but Class Counsel's rates are in line with what has been approved in other consumer cases in their home area. *E.g., Reid v. Unilever United States, Inc.*, 2015 WL 3653318, at *18-21 (N.D. Ill. June 10, 2015) (approving rates in consumer class action of $600 for partner with more than 10 years of experience and around $350 for associates with less experience than Marovitch), *aff'd*, 818 F.3d 302 (7th Cir. 2016); *Barnes v. Aryzta, LLC*, 2019 WL 277716, at *2 (N.D. Ill. Jan. 22, 2019) (approving rates of $675 for 16-year partner and $375 for 4-year associate in consumer privacy class action); *Kasalo v. Trident Asset Mgmt., LLC*, 2015 WL 2097605, at *3 (N.D. Ill. May 3, 2015) (approving $375/hour rate for attorney in consumer FDCPA case with less experience than Marovitch).

arguments on "consent" that could have precluded class certification on an adversarial basis.[11] And yet, Class Counsel here achieved a substantive, $1,837,500 settlement that is not only entirely non-reversionary, but affords Class Members real monetary relief where they would most likely otherwise received nothing.

Moreover, many courts have approved fee requests with similar or higher multipliers. *See Mooney v. Domino's Pizza, Inc.*, 2018 WL 10232918, at *1 (D. Mass. Jan. 23, 2018) (finding multiplier of 4.77 to be "within the bounds of reasonableness for a class action," citing cases contemplating multipliers of up to 8.5); *Gordan*, 2016 WL 11272044, at *3 (3.66 multiplier "eminently reasonable" and "within a range approved by, numerous other courts"); *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (finding 3.32 multiplier to be "well within the range"); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("[T]he modest multiplier of 4.65 is fair and reasonable."); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002), for charting multipliers in common fund cases and noting most fall within 1 to 4 range); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (finding 3.5 multiplier reasonable, citing case law reflecting that "multipliers of between 3 and 4.5 have become common"), *aff'd*, 396 F.3d 96 (2d Cir. 2005); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding 8.5 lodestar multiplier); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (approving attorneys' fees that would constitute a lodestar multiplier of 8.9); *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 736 n. 44 (E.D. Pa. 2001) (concluding that,

---

[11]      *See Hill v. State St. Corp.*, 2015 WL 127728, at *18 (D. Mass. Jan. 8, 2015) (noting that, "[i]n class actions with significant contingency risks, fees representing multiples above the lodestar may be awarded to reflect contingency risks and other relevant factors").

under the cross-check approach, a lodestar multiplier in the range of 4.5 to 8.5 was "unquestionably reasonable"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (5.3 multiplier on one-third fee of $42 million settlement "not atypical"; also citing other authorities); *Beckman v. KeyBank N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (approving an award of 33% of the common fund, representing a multiplier of 6.3, and explaining that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers"); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six."). This further demonstrates the reasonableness of the request.

"[H]ad this case not settled, class counsel's hours, and hence the lodestar figure, would almost certainly have been greater, although it is by no means certain that the class's recovery would also have been larger—indeed, given the vagaries of litigation and trial, it might have been lower." *Davis*, 827 F. Supp. 2d at 185. This fact is all the more relevant given that the Class' autodialer claims are currently on the chopping block before the Supreme Court, *see Facebook, Inc. v. Duguid*, 2020 WL 3865252 (S. Ct. July 9, 2020), and it was Class Counsel's vast experience and efficiency that allowed them to achieve the Settlement where the Class might otherwise have received nothing. Because Class Counsel's lodestar is in the range of reasonableness, this further supports awarding the requested fees.

**C.    The Court should award Class Counsel their case-related expenses.**

In line with the Settlement Agreement, Dkt. 43-1, Agr. ¶ 5.02, Class Counsel seek reimbursement of their expenses totaling $13,544.84, which relate to case filing and service of process, mediation, case-related travel, and discovery charges. *See* <u>Exhibit A</u>, Burke Decl. ¶ 21. This represents $1,500 less than what was requested in Plaintiff's fee petition as a tentative

15

figure, Dkt. 45 at 22, because the fairness hearing occurred remotely without requiring Plaintiff's counsel to fly in. *Id.* Lawyers who recover a common fund for a class are entitled to reimbursement of out-of-pocket expenses incurred during litigation, *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999), and Plaintiff thus respectfully requests that this be granted.

## III.   CONCLUSION

Class Counsel's proposed fee award is a reasonable percentage of the Settlement Fund. Thus, for the foregoing reasons and as stated in Plaintiff's original motion, Dkt. 45, Plaintiff respectfully requests that the Court award Class Counsel $612,500 in attorneys' fees and $13,544.84 in costs and expenses.

Respectfully submitted,

DARREN KONDASH, individually and
on behalf of others similarly situated

Dated: November 18, 2020          By: */s/ Christopher M. Lefebvre*
                                      Christopher M. Lefebvre (#4019)
                                      CONSUMER & FAMILY LAW CENTER OF
                                      CLAUDE F. LEFEBVRE &
                                      CHRISTOPHER M. LEFEBVRE, P.C.
                                      Two Dexter Street
                                      Pawtucket, RI 02860
                                      Telephone: (401) 728-6060
                                      chris@lefebvrelaw.com

                                      Alexander H. Burke (*pro hac vice*)
                                      BURKE LAW OFFICES, LLC
                                      909 Davis Street, Suite 500
                                      Evanston, IL 60201
                                      Telephone: (312) 729-5288
                                      aburke@burkelawllc.com

                                      *Counsel for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 18, 2020, I electronically filed the foregoing with the

Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all

counsel of record.

*/s/ Alexander H. Burke*