UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DARREN KONDASH, individually and on behalf of others similarly situated, | : : : |
| Plaintiff, | : : |
| v. | :  Case No. 18-cv-00288-WES-LDA |
| | : : |
| CITIZENS BANK, NATIONAL ASSOCIATION, | : : : |
| Defendant. | : |

**REPORT AND RECOMMENDATION REGARDING CLASS COUNSEL'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

"Computerized calls are the scourge of modern civilization."
Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 384 (2012) (quoting Senate sponsor of Telephone Consumer Protection Act).

Class Counsel initiated this action in June 2018 alleging that Defendant, Citizens Bank, National Association, made multiple prerecorded nonconsensual robocalls to the cell phones of Class Representative/Plaintiff, Darren Kondash, and over 283,000 class members in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Following a period of contested discovery, the parties participated in a mediation presided over by the Hon. Morton Denlow (ret.) of JAMS.[1] The mediation resulted in a settlement agreement requiring the creation of a non-reversionary Settlement Fund of $1,837,500. According to the settlement, the net Settlement Fund (after payment of the costs of notice and administration and any award the Court may make for attorney's fees and expenses to Class Counsel and an incentive award to the

---

[1] JAMS bills itself as the "world's largest private alternative resolution . . . provider." See "About Us" https://www.jamsadr.com/about/ (last visited Dec. 22, 2020).

Class Representative) is to be allocated among class members who submit timely proofs of claim.

The Court preliminarily approved the settlement on June 2, 2020, and, except for reserving regarding attorney's fees and expenses,[2] finally approved it by an Order that issued on November 12, 2020. ECF No. 49. Regarding Class Counsel's motion for attorney's fees and expenses (ECF No. 45), which was supported by the Declaration of Attorney Alexander Burke (ECF No. 45-1) ("Burke Dec. I"), the Court directed Class Counsel to supplement his motion, including to provide additional information regarding costs. Text Order of Nov. 12, 2020. Class Counsel complied and filed a supplemental brief (ECF No. 50) and a second Declaration of Attorney Alexander Burke (ECF No. 50-1) ("Burke Dec. II"). The motion has been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In reliance on the two Burke Declarations, and in light of the additional information provided in Class Counsel's supplementation, I find that the motion is now ripe for decision and recommend that it be granted for the reasons that follow.

I.      BACKGROUND AND PROPOSED FINDINGS

At the final approval hearing held on November 9, 2020, Class Counsel advised the Court that the notice to the class had been effective in reaching more than 95% of the class members and that 7% of them (an excellent return rate) had responded to the notice. Based on these returns and on the assumption that the fees, expenses and incentive award sought by Class Counsel's motion are approved, Class Counsel predicted that each class member will receive

---

[2] As originally filed, the motion for attorney's fees and expenses also sought an incentive award of $15,000 for the Class Representative; this aspect of the motion was approved by the Court in the Final Approval Order and Judgment. ECF No. 49 ¶¶ 16-17 (approving incentive award but reserving on fees and expenses). It will not be discussed further.

approximately $44.  This recovery is consistent with the information provided to the class in the notice approved by the Court (ECF No. 43-1 at 41), which had estimated that the payout would be between $25 and $60 per class member.[3]  Class Counsel has characterized this result as a "fantastic settlement," ECF No. 50 at 8, while counsel for Defendant advised the Court that the settlement represents a fair value to Defendant and, in Defendant's view, fair value to the class.  There were no objections to the settlement; one class member asked to be, and was, excluded.  ECF No. 45-1 ¶ 15; ECF No. 49 at 3.  Apart from the requested fees and expenses, the Court approved the settlement through the issuance of the Final Approval Order and Judgment on November 12, 2020.  ECF No. 49.

During the final approval hearing, the Court addressed the instant motion for fees and expenses.  The Court noted that the basis for the requested fee was the percentage of fund method, which is normally subject to a lodestar cross-check, and questioned Class Counsel about the amount of the lodestar.  Class Counsel advised that the lodestar had not been provided in the motion; when pressed by the Court, he responded with an estimate ($110,000).  If accurate, this estimate would mean that the total fee ($612,500) requested is almost six times the value of the time expended by counsel.[4]  The Court expressed concern that such a multiplier seemed high and ordered Class Counsel to file a supplemental brief, including to address the risks posed by the case that might justify a fee so disproportionate to the effort invested by Class Counsel in the

---

[3] See Class Notice at http://www.citizensbanktcpasettlement.com/frequently-asked-questions.aspx#a9 (last visited December 22, 2020).

[4] This arithmetic comparator of the percentage-based fee to the value of the work actually performed is referred to as the multiplier.  The multiplier looks at the reasonableness of the relationship between the lodestar (the total attorney's hours multiplied by the applicable billing rate) and the requested fee.  As of the final approval hearing, Class Counsel estimated that the lodestar was $110,000.  Based on a requested fee of $612,500, this lodestar yields a multiplier of 5.6, which was high enough to raise the Court's hackles.

case. By text order a few days later, the Court "directed [Class Counsel] to provide additional information regarding costs." Text Order of Nov. 12, 2020.

Class Counsel's supplemental brief appropriately addresses what is the actual lodestar for this case. Specifically, the second Burke Declaration clarifies that the estimated lodestar ($110,000) provided in response to the Court's inquiry is simply wrong. The correct lodestar is $226,785. Burke Dec. II ¶¶ 19-20. As detailed by the second Burke Declaration, this lodestar is based on the work of three attorneys: Attorney Burke who worked for 298.6 hours at the rate of $600 per hour; Attorney Burke's associate, Attorney Daniel Marovitch who worked for 107 hours at the rate of $375 per hour; and local counsel, Attorney Christopher Lefebvre, who worked for 18.75 hours at the rate of $400 per hour. Id. And while the first Burke Declaration contains detailed information regarding Attorney Burke's deep experience in cases like this one, as well as his national reputation in TCPA cases, the second Burke Declaration adds information regarding the TCPA experience of Attorney Marovitch and the consumer law experience of Attorney Lefebvre. Id. ¶¶ 2-11, 19-20.

Although Class Counsel has not provided a declaration with the opinion of an independent attorney regarding the reasonableness of these hourly rates, the second Burke Declaration references many specific cases and other resources, which collectively establish that these rates are well within the realm of reasonable for attorneys of their experience in a case of this type. Burke Dec. II ¶¶ 19-20. Further, while Class Counsel has not provided actual billing records to permit the Court independently to assess the reasonableness of the hours, the amount of time expended generally synchs comfortably with the work necessarily performed by Class Counsel – including the pre-filing investigation, the filing of the case, discovery, a complex mediation and the negotiation, documentation and implementation of the settlement – to bring

4

the case to a successful conclusion. Accordingly, I find the lodestar ($226,785) to be a reasonable reflection of the work actually performed by Class Counsel.[5]

In support of the request for a one-third contingent fee, the first Burke Declaration avers that the Class Representative entered into an agreement with Class Counsel that the fee would be contingent on a successful result, as well as that, should the class be certified, the fee would be whatever amount is determined by the Court. Burke Dec. I ¶ 18. The second Burke Declaration confirms that Class Counsel worked on this case on an entirely contingent-fee basis. Burke Dec. II ¶ 14. Class Counsel emphasizes that all risk of loss for this case was borne by his small law firm. Id. ¶ 12. Further, based on his own extensive experience in litigating TCPA cases on behalf of clients, as well as in interacting with other attorneys doing the same work, Attorney Burke avers (and, in reliance on his averment, I find) that, he "is confident that the market rate for plaintiff contingency representation for this kind of case is between one-third and 40%." Id. ¶ 13.

Regarding the risks posed by this engagement undertaken on a contingent basis, the Court should begin the inquiry focused on the reality that the injury caused by the intrusion of repeated unwelcome robocalls is largely psychic, based on which Congress established a statutory recovery of $500 per violation with trebling for willful violations, but did not provide for attorney's fees. 47 U.S.C. § 227(b)(3). As a practical matter, therefore, a single plaintiff is unlikely to have the potential for a damage recovery large enough to cover the attorney's fee and costs required for litigating a complex TCPA case to conclusion; this means that the private right of action that Congress created could be moribund but for the availability of relief on a class-

---

[5] It must be noted that this lodestar understates the total work that will be done by Class Counsel to bring this case to closure, in that it does not include the work on the supplemental brief or any other time that will be spent on this case after the filing of the supplemental brief. ECF No. 50 at 17.

wide basis. The other TCPA reality is that a robocaller can raise as a defense the argument that some putative class members consented to being called. 47 U.S.C. § 227(a)(4)(A). Due to the availability of this defense, courts have struggled with whether a TCPA class can be certified in light of the potentially impossible task of removing from the class uninjured persons who consented to the calls. E.g., Tomeo v. CitiGroup, Inc., No. 13 C 4046, 2018 WL 4627386, at *12 (N.D. Ill. Sept. 27, 2018) ("individualized issues of consent predominate"); cf. In re Asacol Antitrust Litig., 907 F.3d 42, 52 (1st Cir. 2018) (for class certification, class plaintiff must provide plan to identify and remove any uninjured persons from class). Because of these aspects of TCPA's statutory infrastructure, the risk to an attorney of bringing a TCPA case on a purely contingent basis is very significant.

      The risk undertaken by Class Counsel was further exacerbated recently as courts have grappled with whether TCPA's words used to limn its technical elements – particularly the capacity to generate random or sequential numbers, which is necessary to the statutory definition – mesh with evolving technology, causing one jurist to cry that its "wording . . . is enough to make a grammarian throw down her pen." Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 460 (7th Cir. 2020) (Barrett, J). Indeed, whether calls like those in issue in this case violate TCPA is now pending before the Supreme Court. See Facebook, Inc. v. Duguid, 207 L. Ed. 2d 1118 (2020) (granting writ); Facebook, Inc. v. Duguid, No. 19-511, 2019 WL 5390116, at * ii (U.S. Oct. 17, 2019) (petitioning the court). Also during 2020, TCPA survived a First Amendment challenge only because the Supreme Court severed the offending government-debt exception. Barr v. Am. Ass'n of Political Consultants, Inc, 140 S. Ct. 2335, 2356 (2020).

      Mindful of these risks, Class Counsel accepted this case on a purely contingent basis, exposing himself, his small firm and his local counsel to the hazards of investing substantial time

and treasure over a protracted period (to the exclusion of other work) with no return.  And by ending this case with a certified class and a Settlement Fund large enough for meaningful compensation for the class, Class Counsel successfully sidestepped all of these potential landmines and achieved an outcome that confers a substantial benefit on the class.

With respect to expenses, the second Burke Declaration breaks down the actual amounts spent on the mediation ($9,565.39), case-related travel ($2,072.55), discovery ($1,360.10) and court fees ($546.80).[6]  Burke Dec. II ¶ 21.  Like the time spent and hourly rates applied, these also appear to be well within a range that is facially reasonable.  The total sought is $13,544.84.

In sum, the motion referred to me seeks $612,500 as an award of attorney's fees based on one-third of the Settlement Fund and expenses of $13,544.84.  These amounts are consistent with or less than what was included in the advisory to the class in the court-approved notice.[7]

## II.      LAW, PROPOSED CONCLUSIONS AND RECOMMENDATIONS

### A.      Attorney's Fee Award

In a certified class action, the Court may award reasonable attorney's fees and costs as authorized by law or the parties' agreement.  Fed. R. Civ. P. 23(h).  Here, fees are not authorized by law because the TCPA is not a fee shifting statute.  Bais Yaakov of Spring Valley v. Act, Inc., 798 F.3d 46, 47 n.1 (1st Cir 2015); Holtzman v. Turza, 828 F.3d 606, 608 (7th Cir. 2016).  Therefore, the right of Class Counsel to be paid from the Settlement Fund derives from the long-accepted principle that "a litigant or a lawyer who recovers a common fund for the benefit of

---

[6] The original motion included an estimate for travel to the final hearing.  Because of the COVID pandemic, the hearing was remote.  Therefore, the amount requested by the supplemental brief is reduced to reflect this savings. ECF No. 50 at 22-23; Burke Dec. II ¶ 21.

[7] See Class Notice at http://www.citizensbanktcpasettlement.com/frequently-asked-questions.aspx#a19 (last visited Dec. 22, 2020).

persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).

As held by the First Circuit, in a contingent class case like this one, the "percentage of fund" approach is appropriate because it is easy to administer; it reduces the possibility of collateral disputes; it enhances efficiency throughout the litigation; it is less taxing on judicial resources; and it better approximates the workings of the marketplace. In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir. 1995). For these reasons, the "use of the [percentage of fund] method in common fund cases is the prevailing praxis." Id. Indeed, it is fair to say that a "clear consensus among federal and state courts" has emerged that the percentage of fund approach is the more efficient, better reasoned, and effective method. Gordan v. Massachusetts Mut. Life Ins. Co., No. 13-CV-30184-MAP, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) (internal quotation marks omitted). Consistent with these principles, the traditional one-third of the fund has been routinely approved as appropriate for TCPA settlements in courts in other circuits. E.g., Hanley v. Tampa Bay Sports & Entm't LLC, No. 819-CV-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (in TCPA case, "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund"); Schwyhart v. AmSher Collection Servs., Inc., Case No. 2:15-cv-01175-JEO, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (in TCPA case, fee of "one-third of the Settlement Fund . . . is fair and reasonable."); Wreyford v. Citizens for Transportation Mobility, Inc., Civil Action File No. 1:12-CV-2524-JFK, 2014 WL 11860700, at *2 (N.D. Ga. Oct. 16, 2014) (because, but for this case, counsel could have expended these resources on other employment and fee was entirely contingent on outcome, court approves TCPA fee based on one-third of settlement fund). In this Court (and in this Circuit), the

percentage-of-fund method resulting in an award amounting to one-third of the fund has been held to be appropriate, as long as the resulting fee is reasonable. In re Loestrin 24 Fe Antitrust Litig., No. 1:13-md-2472-WES-PAS, 2020 WL 4035125, at *4-5 (D.R.I. July 17, 2020), report and recommendation adopted, No. 1:13-md-2472-WES-PAS, ECF No. 1462 (D.R.I. Sept. 1, 2020); see Trombley v. Bank of Am. Corp., Civil No. 08-cv-456-JD, 2013 WL 5153503, at *8-9 (D.R.I. Sept. 12, 2013) (approving attorney's fees and costs amounting to 30% of settlement fund); In re Relafen Antitrust Litig., 231 F.R.D. 52, 77-82 (D. Mass. 2005) (approving one-third fee); Mazola v. May Dep't Stores Co., No. 97CV10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("in this circuit, percentage fee awards range from 20% to 35% of the fund").

For guidance in establishing the reasonableness of a percentage-based fee award of one-third of the fund, this Court been guided by the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

In re Loestrin 24 Fe Antitrust Litig., 2020 WL 4035125, at *5 (internal quotation marks omitted). The mimic-the-market approach has also been deployed, for example in a case from the District of New Hampshire but staffed by judicial officers of this Court sitting by designation. In re Cabletron Sys., Inc. Sec. Litig., 239 F.R.D. 30, 43-45 (D.N.H. 2006) (market-based information used to set a reasonable fee). This market approach looks to the typical arrangement reached between attorneys and clients in comparable cases to determine whether the requested percentage is reasonable. Id.

Consistent with what seems to be emerging as a well-settled practice, this Court also looks to the lodestar as a cross-check in examining the reasonableness of a fee request. In re

Loestrin 24 Fe Antitrust Litig., 2020 WL 4035125, at *5; see In re Cabletron Sys., Inc. Sec. Litig., 239 F.R.D. at 38 ("it is sufficient to conclude that when the lodestar cross-check is applied to the fee award in this case, it raises no reasonableness concerns").  While exclusive reliance on daily time records to calculate the lodestar and a multiplier is outmoded and rarely used, the lodestar is useful as a guide whether a proposed fee calculated by using a percentage-of-settlement method is an inappropriate windfall.  In re Solodyn Antitrust Litig., Civil Action No. 1:14-md-2503 (DJC), 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (where "lodestar cross-check suggests that the request for attorneys' fees is reasonable," attorneys' fees awarded totaling one-third of settlement fund); David F. Herr, Annotated Manual for Complex Litigation § 14.122 (4th ed. May 2020 Update) ("The lodestar is . . . useful as a cross-check on the percentage method").  Comparison of the percentage-based fee to the lodestar is particularly useful as long as the court is easily able to confirm the reasonableness of the lodestar.  In re Loestrin 24 Fe Antitrust Litig., 2020 WL 4035125, at *6 (in lengthy and complex antitrust case, court became comfortable with reasonableness of lodestar based on ongoing quarterly scrutiny of daily time entries).

Whether a particular multiplier suggests that a fee is not reasonable is a nuanced determination that depends on an array of considerations.  For example, a fee that is more than double (a multiplier larger than two) the lodestar should be closely scrutinized in so-called "megafund" cases (where the fund approaches or exceeds $100 million).  See In re Loestrin 24 Fe Antitrust Litig., 2020 WL 4035125, at *5  By contrast, in a relatively smaller class case, such an amplification of the lodestar is generally accepted as appropriate.  See, e.g., Gordan v. Massachusetts Mut. Life Ins. Co., No. 13-CV-30184-MAP, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (fee of 3.66 times the lodestar eminently reasonable and is within a range

10

approved by numerous other courts).  This is particularly true where there is high risk and the likelihood of receiving little or no recovery is a distinct possibility; in such cases, it is common for a court to consider a multiplier of more than two as reflecting a reasonable sum to compensate the attorneys for the risk of nonpayment.  Id. see Mooney v. Domino's Pizza, Inc., No. 1:14-cv-13723-IT, 2018 WL 10232918, at *1 (D. Mass. Jan. 23, 2018) ("multiplier in this case is approximately 4.77, which is within the bounds of reasonableness for a class action"); Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 369, 371 (S.D.N.Y. 2002) (multiplier of 4.65 reasonable).

With these principles as a backdrop, I conclude that Class Counsel's request for a fee of $612,500, representing one-third of the Settlement Fund, is eminently reasonable.  First, and most significant, the Settlement Fund provides for a substantial award of money for the benefit of a meaningful percentage of a significantly-sized class, with the collateral benefit of deterring the use of the intrusive robocalls from which Congress tried to protect consumers in enacting TCPA.  Second, Class Counsel have demonstrated that Attorney Burke, his associate and his local counsel are well-skilled and deeply experienced, particularly in TCPA cases, an arena in which Attorney Burke enjoys a national reputation, as well as that they have effectively and efficiently prosecuted this case to a successful conclusion.  Further, in undertaking this case, Class Counsel accepted significant risk of no payment for substantial work, including foregoing other work (a significant matter for a small firm) and expending out-of-pocket expenses with no guarantee of reimbursement.  Because this case arose under TCPA, Class Counsel's risk was significantly enhanced by recent developments in the law, which made class certification (essential to litigate a TCPA case on a cost-effective basis) more challenging and raised the specter of unconstitutionality or unenforceability as the Supreme Court has struggled with

TCPA's interpretation. Mindful of these considerations, and in reliance on the second Burke Declaration (¶ 13), I find that, in a TCPA case, a percentage of fund ranging from one-third to forty percent is consistent with the market rate for such contingency arrangements in TCPA cases, as well as that the Class Representation's agreement with Class Counsel was based on such a contingent arrangement. Burke Dec. I ¶ 18. These findings and conclusions are not rebutted by objections to the requested fees; to the contrary, no objections were received.

Turning to the lodestar cross-check, as noted *infra*, I conclude that the lodestar is a useful tool for this case in that I find that the hours and rates presented in the second Burke Declaration (totaling $226,785) are a reasonable, indeed understated, reflection of the value of the work actually performed by Class Counsel on this case. I further find that this lodestar confirms the reasonableness of a one-third-of-fund fee award in that the requested fee ($612,500) is less than three times the lodestar. That is, mindful of the risk Class Counsel accepted at the outset of the matter, I find that a multiplier of 2.7% in the circumstances presented here is reasonable and does not amount to a windfall at the expense of the class.

Based on the foregoing, I find the percentage method of calculating the fee award should be the basis for payment of Class Counsel. Mindful of the holistic factors listed in <u>Loestrin</u> and the mimic-the-market approach used in <u>Cabletron</u>, I further find that one-third of the Settlement Fund is fair, reasonable and appropriate compensation for the work done by Class Counsel to create the Settlement Fund. For all of these reasons, I recommend that the Court approve an attorney's fee for Class Counsel of $612,500, to be paid from the Settlement Fund.

B. **Costs and Expenses**

When, as here, the expenses requested are modest and synch with the matters that arose over the course of the case, the Court's review should be for irregularities and, if none are

apparent, should review the expenses as presented. See generally In re Loestrin 24 Fe Antitrust Litig., 2020 WL 4035125, at *6.  In this case, the most significant expense was almost $10,000 for the mediation, which was presided over by a well-qualified JAMS-based retired jurist.  Burke Dec. II ¶ 21.  Otherwise, the expenses are *de minimis*.  Importantly, in recognition that this is a contingency engagement, ECF No. 45 at 22, Class Counsel did not include any of his or local counsel's overhead in the requested amount.  Finding that the amount requested appears reasonable,[8] I recommend that all requested expenses ($13,544.84) be approved for reimbursement from the Settlement Fund.

### III.  CONCLUSION

Based on the foregoing, I recommend that the Court grant the Class Counsel's Unopposed Motion for Attorneys' Fees and Expenses (ECF No. 45) and approve the following payments out of the Settlement Fund:

(1)   Reimbursement for costs and expenses of $13,544.84; and

(2)   Attorney's fees for Class Counsel of $612,500, which amounts to one-third of the Settlement Fund.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

---

[8] Class Counsel did not support the motion with authenticated copies of bills and invoices.  If the amounts were not so modest, I would have delayed this decision until such materials were submitted.  However, while that may be the better practice, in this case, I did not deem it necessary.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 23, 2020